JANUARY TERM, 1874. 229

State ex rel. Danforth vs. Kuehn, State Treasurer.

## STATE ex rel. DANFORTH VS. KUEHN, State Treasurer.

CORPORATION: AMOTION: STATUTE CONSTRUED. (1) *Treasurer of "Northern Wisconsin Hospital for the Insane" not required to be a member of the board.* (2) *Power of corporation to remove officer.* (3) *Said trustees not a corporation. Their power of amotion.* (4) *Rights of relator.*

Chapter 176, Laws of 1872, provides that the trustees of the "Northern Wisconsin Hospital for the Insane," at their annual meeting, "shall choose one of their number president, and a secretary and a treasurer, for the year ensuing, and until their successors shall be elected and qualified." *Held,*

1. That the statute does *not* require the secretary or treasurer to be a *member of the board.*

2. That even if the board were a *corporation,* it could not, by virtue of the power of *amotion* incident to its corporate existence, and without a further express grant of power, remove one of its said officers during his term, except *for good cause shown;* and such cause must be one affecting his capacity or fitness for the office. *State ex rel. Gill v. Common Council, etc.,* (10 Wis., 254), and subsequent cases in this court.

3. Said board is *not* by the statute declared to be a *corporation,* but its members are merely spoken of as *officers.* As public officers they have no power of *amotion* by the statute.

4. The relator having been regularly elected treasurer of said hospital for one year (which time has not expired), and not having resigned, removed or become disqualified, is still treasurer, notwithstanding the subsequent appointment by the board of another person to fill said office.

APPLICATION for a *Mandamus.*

The petition of *E. M. Danforth* to this court stated, in substance, that on the third Wednesday of October, 1873, at the annual meeting of the trustees of the Northern Hospital for the Insane, duly held at the hospital building, the petitioner (who was then an elector of this state, and one of said trustees), was by such trustees duly elected treasurer of said hospital for the year ensuing, and until his successor should be elected and qualified; that he gave bond as required by law, which was duly approved and filed, and thereupon entered upon the du-

ties of said office, and from thence until the filing of said petition continued to be, and still was, the treasurer of said hospital; that as such treasurer he was entitled to the care, control and custody of all moneys appropriated by the legislature to the use of said hospital; that the respondent was the treasurer of this state, and as such had in his hands a large sum of money (specifying the amount), which had been by the legislature duly appropriated for the benefit of said hospital; that on the 29th of January, 1874, the relator, as treasurer of said hospital, duly demanded said moneys of the respondent, tendering him a full and proper receipt therefor, but respondent utterly refused to pay the same to him. The petition stated that the relator had no moneys in his possession or under his control as such treasurer, nor were there any in the possession or under the control of the trustees of said hospital, to pay the ordinary and current expenses of the hospital; and it set forth facts to show that there was pressing need that the moneys in the hands of the respondent, appropriated to said hospital, should be paid over to the treasurer thereof. It further stated that the relator was entirely without other remedy in the premises, and prayed for the writ of *mandamus*, etc.

An alternative writ having issued, the respondent made return thereto, that he had in his hands, as state treasurer, the sum of money mentioned in the petition, belonging to and set apart for the use of said hospital; that at the time the relator was elected treasurer of said hospital, he was one of the trustees thereof, but that his term of office as such trustee expired on the first day of November, 1873, and that on or soon after that day, one T. D. Grimmer was by the governor of this state duly appointed trustee of said hospital in the place of the relator, and said Grimmer duly qualified, etc., and the relator ceased to be such trustee long before he made demand on the respondent for said moneys; that on or about the 16th of January, 1874, the board of trustees of said hospital, at a meeting thereof duly held, etc., duly appointed said T. D. Grimmer as

treasurer thereof, in the place of the relator, and said Grimmer duly filed his bond and qualified as such treasurer, etc. (of which the petitioner had due notice); that respondent was informed and believed that said Grimmer, and not the petitioner, was entitled to the moneys in his (respondent's) hands belonging to said hospital; and that no demand was made upon the respondent by the petitioner for said moneys until after the appointment of said Grimmer, and after the relator had notice thereof.

Annexed to the return, as a part thereof, are, (1.) A letter addressed to the respondent as state treasurer, dated "Oshkosh, Jan. 26, 1874," and signed "WALTER KEMPER, Secretary *pro tem.*," in which the writer states that he has been instructed by the board of trustees of the Northern Hospital for the Insane to inform the respondent that at a session of the board held January 16, 1874, Thomas D. Grimmer was elected treasurer, in place of *E. M. Danforth.* (2.) A certificate of the secretary of state, under the great seal of the state, dated January 26, 1874, showing that said Grimmer had that day filed the bond required by sec. 3, ch. 176, Gen. Laws of 1872, as treasurer of said hospital.

To this return the relator demurred.

*Felker & Weisbrod,* for relator:

1. The board of trustees of the Northern Hospital for the Insane is not a corporation. 2 Hill, 432; 6 id., 501; 10 N. Y., 409; A. & A. on Corp., §§ 1, 2, 5, 110. (1) It has no power in itself to admit trustees to fill vacancies made by death or otherwise; but the power to fill vacancies belongs by law to the governor. (2) It has no fund of its own; but the money and property under its control belong to the state. (3) It cannot sue or be sued. (4) It has no seal. 2. The trustees are merely *officers*—persons employed to exercise a public function or employment. Bouvier's Law Dic.; Laws of 1872, ch. 176, sec. 3. 3. There are cases where persons having charge of a public charity are corporations, or corporations *sub modo;* such as school dis-

trict boards, boards of regents, supervisors of the poor, trustees of religious societies, etc. 3 Denio, 183; Tay. Stats., title "Corporations." But in all these cases the corporate existence is either expressly conferred by statute, or is fairly to be implied from the terms of the statute creating such body. And even if the board here in question should be held to be a corporation *sub modo*, it has not the power of amotion. A corporation *sub modo* is not really a corporation, but is a body that exercises certain *quasi* corporate powers *expressly and specifically* conferred upon it; and it can exercise no other powers. The right is given to this board to remove the superintendent of the hospital under certain circumstances (sec. 7, ch. 176, Laws of 1872); but no other right of amotion is given to it. When the trustees elect a treasurer, he holds his office for one year *by force of the statute.* (Sec. 3 of the act.) 4. The treasurer is not required to be a member of the board; and the relator's term of office as treasurer did not expire by reason of the expiration of his term of office as a trustee. A. & A. on Corp., § 424; *Doremus v. Dutch Ref. Church*, 2 Green Ch. (N. J.), 332. 5. If this board has any power of amotion as against the treasurer, that power can only be exercised *for cause.* 20 Wis., 63; A. & A. on Corp., § 423.

*The Attorney General,* for the respondent.

DIXON, C. J. The question of statutory construction involved is very plain. The statute provides that the annual meeting of the trustees "shall be held upon the third Wednesday in October in each year, in the hospital building, when the trustees shall choose one of their number president, and a secretary and treasurer, for the year then ensuing, and until their successors are elected and qualified." The question presented is, whether these words require that the treasurer shall be a member of the board of trustees. We answer, very clearly not. The language of the statute is clearly calculated to show that such was not the legislative intent. It is, "one of their num-

ber president, and *a secretary and treasurer ;* " thus showing, by a kind of antithesis, that the design was not that the secretary and treasurer must be members of the board. If the intention had been to require the secretary and treasurer to be also members of the board, some different form of expression would have been used, as, " and one secretary and one treasurer," or other equivalent mode of speech testifying such intention, which could have been very easily done, if that had been the purpose of the framers.

It was argued that the board of trustees are a corporation, or *quasi* corporation, charged with the administration of a certain public charity, and as such corporation, actual or *quasi,* are clothed with the power of amotion of the officers elected by them ; and that the election by them of a successor to the relator as treasurer was a removal of the relator from the office. The statute nowhere declares the board of trustees to be a corporation, or body in that nature, but designates the members individually as persons holding office. They are so spoken of in section two of the act; while section three declares that " the trustees, before entering upon *the duties of their office,* shall take and subscribe an oath," etc. It is not easy to perceive, therefore, how the board can be regarded in any sense as a corporation, but only as officers of the state appointed to exercise certain public functions and employments. As public officers it is certain that the power of amotion is not given to them by the statute.

But if the board were a corporation, and so possessed of the power of amotion as incident to its corporate existence, it would not then follow that it could remove the relator arbitrarily and without cause. No such power would exist, unless expressly given by the legislature. The power to remove, as an incident, would only be to remove for good cause shown ; and that cause must be something affecting the character and qualifications of the incumbent, and showing his unfitness or want of capacity longer to discharge the duties of his position. These

principles are more or less exemplified by several cases which have been before this court, and need not be further considered here. *State ex rel. Gill v. Common Council of Watertown*, 10 Wis., 254; *State ex rel. Graham v. Chamber of Commerce*, 20 id., 63; *State on complaint of Kennedy v. McGarry*, 21 id., 496; *Dickinson v. Chamber of Commerce*, 29 id., 45.

If, therefore, the appointment of Grimmer to the office of treasurer could be looked upon as an exercise of a power of amotion possessed by the board, and as a removal, or attempted one, of the relator from the office in regular course of proceeding, still the action of the board must have failed for want of any cause shown for such removal. The relator is a person holding office for a fixed term, that is, for one year from the time of his election and thereafter until his successor is elected and qualified. He does not hold *durante bene placito*, or at the pleasure of the body electing him. If he did, like postmasters, collectors of revenue, and many other officers under the federal and state governments, then the appointment of a successor would operate as a removal, and the power of amotion would be quite unnecessary.

Having been regularly elected to the office, the term of which is yet unexpired, and no resignation, disqualification or removal having intervened, it follows that the relator is still the lawful treasurer and person entitled to demand and receive from the defendant, the treasurer of the state, the moneys mentioned in the relation and admitted by the return to belong to the hospital funds. It follows, also, that the demurrer to the return must be sustained.

*By the Court.* — It is so ordered.