(Decided May 8th, 1896).

***

## THOMAS P. TOWNSEND *vs.* F. ALBERT KURTZ.

*Office of Insurance Commissioner—Removal of Commissioner Without Notice Before Expiration of Term of Office—General and Special Power to Remove Officers.*

When an office is created by statute and it is provided that the incumbent shall hold the same for a fixed term unless sooner removed by the appointing power, such general power to remove carries with it the right to remove an incumbent before the expiration of his term without notice and without charges of misconduct.

Under Code, Art. 23, sec. 121, the Insurance Commissioner is appointed by the Governor, Treasurer and Comptroller for the term of four years, and it is provided that he "shall hold his office during the term for which he is appointed or until his successor is appointed and qualified *unless sooner removed by the Governor, Treasurer and Comptroller."* On Dec. 18, 1895, the appellant was elected Insurance Commissioner, upon the resignation of his predecessor, was commissioned to hold the office for four years or until duly discharged therefrom, and, after qualification, entered upon the duties of the office. On March 12, 1896, the Governor, Treasurer and Comptroller adopted a resolution removing the appellant from the office, to take effect upon the appointment of his successor, and on the next day the appellee was elected Insurance Commissioner for four years. He demanded a transfer of the office from the appellant, which was refused. No charges of misconduct were made against the appellant and he was removed without notice or

hearing. Upon a petition for a *mandamus* to compel the surrender of the office, *held*, that the statute authorized that the Governor, Treasurer and Comptroller, by consent of all, to remove the appellant from office, without notice and before the expiration of his term.

Where there is no limit fixed to the term of an office and the appointee holds at the will of the appointing power, he may be removed without notice and without charges being preferred.

Unless the statute authorizes it, no one appointed to office for a definite term can be removed for cause without having an opportunity to be heard in his defence.

The Legislature has the right to authorize the appointing power to remove its appointees without assigning any cause, when they are appointed under statutes.

Appeal from an order of the Superior Court of Baltimore City (DOBLER, J.), directing the issue of a peremptory writ of *mandamus* commanding the appellant to surrender to the appellee the office of Insurance Commissioner of the State of Maryland.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, BOYD and RUSSUM, JJ.

*Bernard Carter* (with whom was *Albert S. J. Owens* on the brief), for the appellant.

The fact that a power of removal is given in reference to an office to which a definite term is attached, does not destroy the definiteness of the term ; but leaves open the question whether that power was intended to be for cause only, or to be exercised in the discretion of the appointing power, with or without cause, and with no obligation to assign any cause or give the officer any notice of the charges or opportunity to be heard in his defence. When, therefore, the Judge assumed that the power of removal given, *ipso facto* destroyed the definiteness of the term, and converted into one to be held at the discretion of the appointing power, his act was a clear *petitio principii*. In the replication the point is made that at the meeting of December 18, 1895, at which the appellant was elected, he was, as

shown by the minutes of the said meeting, only elected as
Insurance Commissioner, and not elected as such for the
term of four years.    This point was not made in the trial
of the case, we presume, because it is fully answered by
the decision of this Court in the case of *Marshall* v. *Har-
wood*, 5 Md. 423 ; 14 *Mo. Appeals*, 302, 303.

We submit that the following is a correct classification of
the nature of office as regards the power of removal of the
incumbents therefrom : (*a*) Where a *definite* term of office
is not fixed by law, the officer, or officers by whom a person
was appointed to a particular office, may remove him at
pleasure and without notice, charges or reasons assigned,
and this, though no express power of removal is given.
*Throop on Public Officers*, section 354 ; *ex parte Hannen*,
13 Peters.    (*b*) Where it is expressly declared that the
office is to be held during the pleasure of the appoint-
ing power, or as long as in his judgment the incumbent
properly discharges the duties of the office ; or where,
though the office is for a definite term, the power of re-
moval is declared to be at *the pleasure* or in the discretion
of certain persons.    In such cases the will of the removing
power is without control, and no reasons can be asked for,
or need be given, and no opportunity need be given to the
officer to be heard as to his removal.    *Throop on Public
Officers*, section 361.    (*c*) If the officer is appointed or
elected for a definite term, and a power is vested in some
official or officials to remove him for cause, that is, for in-
competency or neglect of duty, he can only be removed
upon definite charges, and after notice and an opportunity
to be heard.    *Throop on Public Officers*, section 364 ; *Field*
v. *Comm.*, 32 Pa. 478 ; *Dullam* v. *Wilson*, 53 Michigan,
392.

The principles thus announced will be found to be those
which have received recognition, and have been adopted,
by this Court in the case in *Miles* v. *Stevenson*, 80 Md. 365.

The appellant contends that, though the Insurance Com-
missioner is not within the express terms of the third class

—that is so say, though it is not in *words* declared in sec-tion 121 of Article 23, that the Insurance Commissioner can only be removed for misconduct or incompetency, that is, for cause, the language being " unless sooner removed ;" yet this officer having been appointed for a definite term of four years, the power of removal, when coupled therewith, means a removal only for cause, and does not mean a re-moval in "the *discretion*," or at the *pleasure* of the officials named.　Which, then, is the proper implication, and, there-fore, the proper construction ?　We submit that independ-ently of any decided case, the true principles applicable to a proper administration of civil government in our State de-mands that the implication and construction contended for by the appellant should prevail.　We submit that the prin-ciple upon which the *first* of the above mentioned classes of cases was decided, goes far to establish our contention ; that is, the class where no *definite term* is fixed to the office.

This language, " unless sooner removed," will be inter-preted as simply intended to *confer jurisdiction* on the officials by whom the appointment was made, to *remove ;* because, in the absence of an *express grant* of power to re-move an official who *holds for a term of years*, there would be no power of removal vested anywhere, except by convic-tion in a Court of Law of such an officer ; and cases are to be found on both sides of the question, whether even by conviction in a Court of Law a civil officer of the State Government could be removed in the absence of an express provision to that effect in a statute or Constitution of the State.　But however this last-mentioned question may be decided, it is, of course, desirable that the power to remove the Insurance Commissioner by more direct means than a conviction in a Court of Law should exist.　Therefore, we contend, the amplest scope is given to the words " unless sooner removal," by imputing to them the intent thereby to confer on the Governor, Treasurer and Comptroller the jurisdiction to remove, but with no authority to exer-cise the jurisdiction, except for the purpose of getting

rid of an incompetent or unfaithful officer, and not for the purpose of shortening the *term* which the Legislature intended every competent and faithful officer should have. *State* v. *Brown,* 57 Mo. App. 199; *Hallgen* v. *Campbell,* 82 Mich. 255; *O'Neill* v. *Regester,* 59 Md. 288.

*Harry M. Clabaugh, Attorney-General,* and *George R. Gaither, Jr.,* for the appellee:

That the tenure of this office is not for a fixed term, but its duration is uncertain and indefinite, and therefore the incumbent is removable at the will of the appointing power. The construction of the express language of this statute makes this contention clear. The incumbent holds his office "during the term for which he is appointed, or until his successor is appointed and qualified, *unless sooner removed by the Governor, Treasurer and Comptroller.*" The words of the statute must be taken in their usual or ordinary signification. The universal rule in the United States is that where a definite term of office is not fixed by law, the officer or officers by whom a person was appointed to a particular office may remove him at pleasure, and without notice or charges or reasons assigned. *Throop on Public Officers,* sec. 354; *Miles* v. *Stevenson,* 80 Md. 358; *Ex parte Hennen,* 13 Peters, 230; *Patten* v. *Vaughan,* 39 Ark. 211; *People* v. *Hill,* 7 California, 97; *Carr* v. *State,* 111 Indiana, 101; *Newson* v. *Cocke,* 44 Miss. 352; *State* v. *Baum,* 29 La Ann. 243; *People* v. *Fire Commissioner,* 73 N. Y. 437; *People* v. *Robb,* 126 N. Y. 180.

By the very terms of the clause of the statute creating the office, it is provided that the appointee shall "hold the office during the term for which he is appointed, *unless sooner* removed by the Governor, Comptroller and Treasurer." The office is made by its very terms of uncertain tenure, the term of four years is liable at any moment to be divested by the removal of the incumbent by the action of these officials named. In what respect does an office held upon such a tenure differ from an office which is held in express

terms during the will of the appointing power ? In both instances the office is liable to termination by the happening of the same event—the action of the appointing power in making the removal. In no other way can the words "unless sooner removed" be given any significance, and that they are entitled to such a reasonable construction is manifest; in the first place by the universal canon of construction of statutes that every word must be given its proper meaning and effect, unless such a construction is repugnant to the manifest intention of the law, and in the second place because these words have been judicially construed as proper to be used for conferring such a limitation of an office. "Unless sooner removed" is the identical language used in the Revised Statutes of the United States regarding the tenure of postmasters (Revised Statutes, sec. 3830), and also for all other officers of the National Government (Revised Statutes, sec. 1767); "all civil officers of the United States shall hold their office for a term of four years, unless sooner removed by the appointment of a successor and his confirmation by the Senate, or by removal by the President with the consent of the Senate." And in our Constitution (Article 2, sec. 22), "the Secretary of State shall continue in office, *unless sooner removed by the Governor*, 'till the end of the official term of the Governor from whom he received his appointment." In the latter instance it is the language used for abridging the term of the Secretary of State, who is by the term of the Constitution to take the place of the Governor's private secretary. There can be no question that such an officer, on account of his close confidential relations with the Executive, should be, upon every principle of public policy, liable to immediate dismissal from office at the will of the Governor. The use of such language, therefore, in regard to such an office, must be in its very nature for the purpose of providing this period of removal as thereby terminating *ipso facto* the former tenure. The undisputed right of absolute removal by the President of the United States has existed for over a century. Moreover, in the

fully reasoned and very recent case in 50 *Kansas*, 289, HORTON, C. J., gives a full judicial construction to such words.

Assuming, however, for the sake of the argument, that the language used in the statute was " for the term of four years, with power to the Governor, Comptroller and Treasurer to remove said Insurance Commissioner," such power of removal is absolute and exercisable at will. Can there be any question that such a power of removal, conferred upon these officers of the State, cannot be judicially inquired into ? The power being conferred in express terms, it is immaterial as to whether the term is created for a definite period, or for an indefinite one. It is only when there is no power of removal mentioned that the fixity of the term becomes of importance. It is submitted that, in all instances where the power of removal is expressly conferred, the right of removal is determined by such power, and not by inferences. *People* v. *Mayor of New York*, 82 N. Y. 494 ; *People* v. *Whitlock*, 92 N. Y. 198 ; *Williams* v. *Gloucester*, 148 Mass. 259 ; *Knowles* v. *Boston*, 12 Gray, 339 ; *O'Dowd* v. *Boston*, 149 Mass. 445 ; *State* v. *Baum*, 29 La. An. 244 ; *Houseman* v. *Com.*, 100 Pa. St. 222 ; *Blake* v. *U. S.*, 103 U. S. 231 ; *Lane* v. *Com.*, 103 Pa. St. 485 ; *Wilcox* v. *People*, 90 Ill. 206 ; *Sweeney* v. *Stevens*, 46 N. J. L. 245 ; *Com.* v. *Harriman*, 134 Mass. 314 ; *State* v. *Hawkins*, 44 Ohio St. 98 ; *Eckloff* v. *District of Columbia*, 135 U. S. 240.

It was contended by the distinguished counsel for the appellant at the trial below, that because there were different causes for removal prescribed in the Constitution of the State for the various officials who held offices provided for in the Constitution, that, therefore, removals for cause only was the policy of this State. But how can the fact that these provisions were placed in that instrument for officers, most of whom are elected by the people, apply to subordinate officers created by statute ? It is shown, on the contrary, by the absence of any general legislation fixing

the tenure of office of any of the subordinate officials of
this State, by the absolute right to remove all school teach-
ers of this State (Art 77, sec. 49), all officers of the House
of Correction (Art. 27, sec. 306), the Warden of the State
Penitentiary (Art. 27, sec. 391), all employees of the In-
sane Asylum (Art. 44, sec 5), and all officers in the city of
Baltimore holding under the Mayor and City Council (Code
of Public Local Laws for Baltimore City, Art. 4, sec. 31),
that the policy of the law of this State favors removals at will
of all subordinate officials.   Such being the case, surely
this Insurance Commissioner, occupying merely the posi-
tion of the head of a fiscal department of this State, should
be subject to removal at the will of the Governor, Comp-
troller and Treasurer of the State.   It is an office which
annually handles a large amount of the revenues of the
State, and a glance at the numerous duties imposed upon
the Insurance Commissioner, as set forth in the Code (Art.
23, sec. 121 to 142), will show how important it is that this
office should be filled by one who is in every manner per-
forming the duties of his position.   It will be readily seen
from an examination of the scope of his duties that there
might be most ·imperative reasons for removing an incum-
bent of this position, although they might not be such as
would amount to the " incompetency or misconduct " which
is made the ground for the removal of some officials of this
State, or to the " wilful neglect of duties " for which pro-
visions for removal are made regarding other officers.
These reasons, amounting to a judicial construction of this
statute, would seem to require this Honorable Court to
make every presumption in favor of the express language
used in this statute.

Offices, in this State, not being looked upon, in any .
manner, as the property of the individual, all the old com-
mon law analogies based upon a judicial investigation and
hearing as an essential condition for the forfeiture of a pri-
vate right of property, cannot be applied.   On the contrary,
the office existing for the benefit of the public, every con-

struction must be adopted which will aid in the most efficient administration of the laws by those officials who represent and are in sympathy with the policy of the appointing power, the people themselves or their chosen representatives. In the case at bar the necessity of such an application is apparent. Mr. I. Freeman Rasin, the former incumbent, resigned his office in December, 1895, (just one year before the expiration of his term), and by the appointment of the appellant, Mr. Townsend, by the old Board of Public Works, just two weeks before the expiration of its official existence by the retirement of ex-Governor Brown and ex-Comptroller Smith, it was attempted (under the contention of the appellant), to oust the present Board of Public Works, just elected by the people, of their right to fill this office. Assuredly there can be no equity, either moral or legal, in such a contention. By the adoption of such a precedent it would be possible for retiring boards of all kinds, by the acceptance of the resignations of old officials and the reappointment for another full term of the former incumbents or their clerks, to perpetuate their power by this questionable process, and thereby deprive an incoming board of their rightful prerogative and commission from the people. Is not every principle of a representative government opposed to such a usurpation of power?

Aside from any express power of removal, the term of Insurance Commissioner is terminated *eo instanti* by the appointment and qualification of a successor. By reference to the section of the Code referring to this office, Code, Article 23, section 121, it is apparent that not only is the manner of appointment set forth in the statute, but in the very sentence describing the tenure of the office two alternative terms are created. The tenure of the office is stated to be " during the term for which he is appointed, *or until his successor is appointed and qualified*, unless sooner removed by the Governor, Treasurer and Comptroller." Applying the canons of construction hereinbefore laid down, the words of the statute are to be taken in their usual or ordinary sig-

nification, unless a contrary intention can be clearly inferred from the context. It is submitted that, under the express language of the tenure of this office, the appointee is to hold the office " during the term for which he is appointed, *or*, . until his successor shall be appointed and qualified." Taking these words in their ordinary usage, the effect of such a limitation is to create two distinct and alternative tenures of the office.

Boyd, J., delivered the opinion of the Court.

· This case involves the title to the office of Insurance Commissioner of the State of Maryland, and was brought to this Court by an appeal from an order of the Superior Court of Baltimore City directing the issue of a peremptory writ of *mandamus*, commanding the appellant, the defendant below, to deliver to the appellee all books, papers, etc., belonging to or in anywise appertaining to the said office, and to surrender the office to him. A brief statement of the facts will suggest the points involved in the controversy. On December 30, 1892, I. Freeman Rasin was appointed Insurance Commissioner for the the term of four years from the date of his appointment, by the Board of Public Works, which was then composed of his Excellency, Frank Brown, Governor; Hon. Marion DeK. Smith, Comptroller, and Hon. Spencer C. Jones, Treasurer. On November 30, 1895, Mr. Rasin tendered his resignation, which was accepted on December 11, 1895, and on the 18th day of the latter month the board unanimously elected the appellant Insurance Commissioner. On the same day Governor Brown issued a commission to him to " hold and execute said office justly, honestly, and faithfully for the term of four years from the date of this commission, or until you shall be duly discharged therefrom." The minutes of the proceedings do not show the time for which he was elected, but section 121 of Article 23 of the Code of Public General Laws provides that the chief officer of the Insurance Department " shall be appointed by the Governor, Treasurer and Comptroller for the .

term of four years, and shall be known as the Insurance
Commissioner  *  *  *  and shall hold his office during
the term for which he is appointed, or until his successor is
appointed and qualified, unless sooner removed by the Gov-
ernor, Treasurer and Comptroller." Under that appoint-
ment the appellant regularly qualified by giving the bond
prescribed by the statute and taking the oath of office, and
entered upon the duties of his office. On March the 12th,
1896, the Board of Public Works, which was then com-
posed of his Excellency, Lloyd Lowndes, Governor; Hon.
Robert P. Graham, Comptroller, and Hon. Thomas Shry-
ock, Treasurer, adopted a resolution that "Thomas P. Town-
send, Insurance Commissioner, be removed from office to
take effect upon the appointment and qualification of his
successor," and on the next day unanimously elected the
appellee for the term of four years from the date of his ap-
pointment. On the 17th day of that month Governor
Lowndes issued a commission to the appellee, who filed his
bond, took the oath of office as required by law, and sub-
sequently made a demand on the appellant for the transfer
of his office, etc., which was refused. No charges were
filed against the appellant for misconduct, incompetency or
other cause, and he was removed without prior notice or
hearing.

The case was tried before the Court without a jury and
the above facts were admitted. The appellee offered a
prayer, which was granted, and the appellant one which was
rejected, and the ruling of the Court on the prayers presents
the question before us for review. The right of the appel-
lee to have the writ of *mandamus* issue is by his prayer
made to depend upon the finding by the Court that the ap-
pellant was removed from the office by the Governor, Comp-
troller and Treasurer, whilst that of the appellant asked for
a verdict in his favor because the attempted removal was
not *for cause* and was without any previous notice or hearing.

It is contended on the part of the appellee that the tenure
of this office is not for a fixed term, but its duration is un-

certain and indefinite, and therefore the incumbent is remov-
able at the will of the appointing power.   It is well settled
that where there is no limit fixed to the term office and the
appointee holds merely at the will of the appointing power,
he may be removed without notice and without charges
being preferred or reasons assigned.   But it would seem
clear that under the very terms of the statute the tenure of
this office is not for such an indefinite term as that.   The
statute says he shall be appointed " for the term of four
years," and that he " shall hold his office during the term
for which he is appointed, or until his successor is appointed
and qualified, unless sooner removed by the Governor,
Treasurer, and Comptroller."   We will have occasion to
discuss later on the effect of this power of removal, but it
cannot properly be said that the appointment is not origi-
nally for a definite term, although subject to removal by the
action of all of the officers above named.   It is true he may
not hold the office four years by reason of death, resigna-
tion, or his removal, if done in the way authorized by law,
but that is the time designated by the statute for which he
shall hold it, *subject to these contingencies.*   It is therefore dis-
tinguished from that class of cases in which the appointing
power is authorized to appoint officers without naming some
fixed term.   Most, if not all, officers provided for by the
Constitution, may be removed under the express authority
given by that instrument, but the fact that they may be
removed, does not convert their offices from those for defin-
ite terms into those held at the will of the persons making
the appointment.   The Constitution, for example, in section
13 of Art. 2, says that the term of all civil officers appointed
by the Governor and Senate, except in cases otherwise pro-
vided for, shall " continue for two years (*unless removed from
office*) until their successors respectively qualify according to
law," and section 15 of the same Article authorizes the Gov-
ernor to " remove for incompetency or misconduct all civil
officers who received the appoinment from the executive for
a term of years."·   It has never been suggested, so far as

we are aware, that such offices were not for the fixed term of at least two years, notwithstanding the fact the incumbents might be removed within that time.

Nor can we receive any aid in our consideration of this point from the language " or until his successor is appointed and qualified." " Or " in that connection is frequently if not generally equivalent to " and," as in the case of *Lynn et al.* v. *Mayor, etc., of Cumberland,* 77 Md. 449, where by an ordinance a tax collector was required to be elected annually and it was provided that he should " hold his office for one year, or until his successor was duly elected and qualified." This Court held that his bond given after such an election was responsible for the second year, although the liability of securities was involved, because his successor had not qualified.

But the Legislature having expressly said that ·the Insurance Commissioner should be appointed for the term of four years, and knowing that his term might be shortened by resignation or in some other legal way, declared that he should hold the office during the term for which he is appointed, or until his successor is appointed and qualified. The duties of the Commissioner are important, and the Legislature wisely provided against a vacancy, and that is evidently all that provision was intended for. If there could be any doubt about this construction of the statute, the case of *Miles* v. *Stevenson,* 80 Md. 358, would seem to be conclusive of it. The Act of 1890, chapter 113, which was then under consideration, expressly provided that the road supervisor should hold his office " for two years, or until his successor is duly appointed and qualified," and should be subject to removal for incompetency, wilful neglect of duty, or misconduct in office. But this Court held that the incumbent, Stevenson, could only be removed for one of the causes mentioned in the statute, whilst if the construction of the appellee be correct, that the language " or until his successor is appointed and qualified " terminated the term of office of Townsend when Kurtz was appointed and

qualified, the same would have applied to that case and Miles' appointment would have been valid.

But there can be no question that the Governor, Comptroller and Treasurer have the power to remove this officer under some circumstances, and hence it becomes important to determine whether their action in removing Mr. Townsend without assigning any cause or giving him notice or hearing was lawful. It must be conceded that if the appellant could only have been removed *for cause* he was entitled to notice and an opportunity to defend himself, for, unless the statute authorize it, no one appointed for a definite term can be removed *for cause* without having an opportunity to be heard in his defence. The great weight of authority is to that effect, and *Miles* v. *Stevenson, supra,* conclusively settles it as the law of this State.

But the real question is whether the statute under consideration is to be so construed as to limit the power of removal to one *for cause.* The statute makes no express declaration on the subject, and we must be guided by the meaning of the language used, by the provisions in the Constitution and other statutes in reference to the removal of officers, by the history of the law in establishing this office and by the reasoning of such authorities as we find applicable to the case. It is contended on the part of the appellant that it is the policy of the State to continue in office *for the term* the incumbent who has been elected or appointed for a definite term, provided he competently and faithfully performs the duties of the office, unless there is something clearly to manifest a contrary intention in the law under which he is elected or appointed. It is true that both our Constitution and our statute laws do designate causes for which most of our officers can be removed, but it is also true that the Legislature has the undoubted right to authorize the appointing power to remove its appointees without assigning any cause when they are appointed under statutory laws. Most of the officers referred to in the Constitution are either elected by the people or appointed by

the Governor, by and with the consent of the Senate, and
are not, as in this case, subject to removal by the action of
those who have the exclusive power to appoint.   The causes
for removal usually given in the Constitution are incom-
petency, wilful neglect of duty and misconduct in office.
But does the fact that most of the officers provided for by
the Constitution and the statutes can only be removed for
cause aid the appellant in his contention?   When we find
that the framers of the Constitution and the Legislatures
have generally named the causes for which officers can be
removed before the expiration of their terms, and that in
this case no causes for removal are given, does it follow by
a necessary or reasonable implication that the Legislature
nevertheless intended to limit the power of removal to that
for cause?   Is not the contrary inference rather to be drawn
—that, inasmuch as the practice has been to name the
causes for which officers can be removed, when they are
omitted, the Legislature did not intend to limit the power
of removal to any particular cause or causes, but intended
to leave it to the discretion of the persons vested with the
power of removal?   The Legislature authorized these
three officers to make the appointment and the removal
could only be accomplished by their unanimous con-
sent.   The Governor is elected by the people for four
years, the Comptroller for two years and the Treas-
urer by the Legislature every two years, and the law-
makers who gave them this power to appoint this officer
might well assume that they would only exercise the power
of removal given them when the interests of the public de-
manded it.   After the appointment was made they might
see that the appointee was not exactly the right man for
this important position, although it would be difficult to
establish charges of incompetency or misconduct in office.
The law requires the Insurance Commissioner to report an-
nually to the Governor his official acts on or before the 1st
day of June, and to report to the Comptroller annually on
the 1st day of December, the fees received and the ex-

penses and disbursements, and to pay into the treasury all excess of receipts over disbursements. So while it is a distinct department, it is kept in close contact with those who appoint its chief officer.

But the history of the organization of the Insurance Department throws some light on this question. By the Act of 1872, chapter 388, the Comptroller was authorized and directed " to assign a clerk in charge of said department, who was to be known as the Insurance Commissioner for the State of Maryland, and he  *  *  *  shall hold his office during the term of the Comptroller making the appointment, or until his successor is appointed and qualified, unless sooner removed by the Comptroller." Now, it can scarcely be doubted that the Comptroller could have removed this clerk thus assigned to this office without preferring charges, for although he was known as Insurance Commissioner and his term of office was fixed and he received the same salary that the Commissioner now receives, he was a mere subordinate officer of the Comptroller. The Act of 1878, chapter 106, which is now section 121 of Article 23, of the Code, used the same language as to the removal as the Act of 1872. If we are correct in assuming that the Comptroller could have removed the clerk known as Insurance Commissioner, concerning which there would seem to be but little if any doubt, why could not the Governor, Comptroller and Treasurer have the same privilege when the Legislature has vested the power of removal in them by the identical language used in the former case ? It would have been an easy matter for the Legislature to have said " unless sooner removed for cause," etc., or to have designated the cause for removal, if such was the intention. But as it did not do so we do not feel justified in reading this law as if words which were left out had been inserted in it, when we can so easily see that it is possible, if not probable, that they were never intended to be there. We are not unmindful of the effect of this construction, but, as was said by JUDGE ALVEY in *McBlair* v.

*Bond*, 41 Md. 157 : "In the course of the argument it was strongly urged that such construction should not be adopted if any other could be maintained, as thereby an incumbent of the office would be subject to causeless and unwarranted removal by the executive. But in answer to this it may be said, that, in the organization of government, confidence must be reposed somewhere, and that no more effectual check could well be imposed upon the undue exercise of the Governor's power over this office than has been imposed by requiring the concurrence of the Senate before removal can be accomplished. The Governor and the Senate are alike the immediate representatives of the people and whatever they do in their official capacity they do under a solemn responsibility to their constituents. The Courts have no right to assume that there has been or will be any undue and improper exercise of power by a co-ordinate branch of the government."

In this case the confidence of the Legislature was reposed in these three high officers that the powers vested in them would not be ruthlessly exercised, and if at any time the law has been or shall be abused it can easily be remedied by the Legislature itself.

We find few analogous provisions in the laws of this State. Section 22, of Article 2, of the Constitution, provides that " A Secretary of State shall be appointed by the Governor by and with the advice and consent of the Senate, who shall continue in office *unless sooner removed by the Governor*, till the end of the official term of the Governor." But the appointment must be sanctioned by the Senate, and he is such an officer as is included in section 15 of Article 2, and therefore can only be removed for one of the causes named therein unless possibly with the consent of the Senate without cause, although we do not deem it necessary to pass upon that question. The State Reporter is appointed by the Court of Appeals, who " shall hold his office for the term of four years, *unless sooner removed by the said Judges.*" Although that question has

never arisen, there would seem to be little doubt that this
Court could remove the Reporter before the expiration of
the four years without preferring charges.   The nature of
his duties requires him to come in close and frequent con-
tact with the members of this Court and it is important for
the proper discharge of his duties that he and the Judges
work harmoniously together.   It may be that shortly after
he is appointed it is discovered that the public interests may
suffer by his continuance in office, although it would be
difficult to establish a charge of incompetency, neglect of
duty or misconduct in office, and such charges should be
fully established when made.   The Legislature having au-
thorized the Judges of this Court to appoint him, fixed his
term of office, but made it contingent upon the act of this
Court if it sees proper, to remove him and did not deem it
necessary to limit that removal to any particular cause or
causes, but left it to the discretion of the Court.   The lan-
guage used in the case of the Reporter is the same as in
that of the Insurance Commissioner.

The authorities on this question are, as might probably
be expected, conflicting.   In the case of the *State* v. *Mitchell*,
50 Kansas, 289, Mitchell was elected a railroad commis-
sioner under a statute which provided for the election of
three persons to hold the office for the term of one, two and
three years, respectively, and that " the executive council
shall in like manner, before the first day of April in each
year thereafter, elect a commissioner to continue in office
for the term of three years from said date.   *   *   *   The
executive council may at any time remove such commis-
sioner, or any of them, and elect others to fill the vacancy,"
etc.   The Court, through CHIEF JUDGE HORTON, said :
" The statute, in our opinion, may be construed to read as
continuing in office a commissioner for the *term of three
years, unless sooner removed by the executive council.*   If the
statute be construed in this way, some operation is given to
all its provisions—that the term of office of railroad com-
missioner is for three years, unless removed before the ex-

piration from it by the executive council ; but if there is no removal or resignation, the term expires in three years." It held that it must give effect to. all the provisions of the statute—that giving the power to remove as well as that fixing the term, and that to construe the provision to mean a removal for cause or upon charges after notice, " we must judicially interpolate into the statute words to change its meaning." It is true that the Court referred to the fact that the journals of the Senate and House showed that there had been an effort to insert in the statute a provision for removal " for good cause shown," which was rejected by the Legislature, but it did not base its decision on that fact alone, but on such reasoning as we think is peculiarly applicable to this case. It will be observed that in reaching the same conclusion we have reached, it construed the statute to be equivalent to the very language used in the statute we are now considering.

In *Sweeney* v. *Stevens*, 46 N. J. L. 345, a jailer was appointed " for the term of five years and until another be appointed in his stead, but such jailor may at any time be removed from office by a vote of two-thirds of all the chosen free-holders of said county for the time being." He was removed without hearing or assigning any cause, and just two days before the board had commended him for his efficiency. The Court said : " This language is plain and seems clearly to authorize the removal of the defendant in the mode in which it has been attempted. We have been referred to no judicial decision and are aware of none which would justify an engrafting upon it of any provision to defeat the power it appears to confer. The Legislature, in creating the office, had the right to provide for its vacation in such manner as they saw fit, and in ascertaining what the manner is we must take their language in its ordinary import." After referring to the claim of the counsel that the fact that the board had commended the defendant for his efficiency, showed there was no cause for removal, the Court said : "But these incidents, although they may show that the re-

moval did not grow out of anything connected with the discharge of his official duties, do not indicate that there was no other reason satisfactory to the members voting for the resolution, and it was not illegal for them to vote upon other considerations."

In *Eckloff* v. *District of Columbia*, 135 U. S. 240, the Court held that " the grant of a general power to remove carries with it the right to remove at any time or in any manner deemed best, with or without notice." See also *Commonwealth* v. *Harriman*, 134 Mass. 314; *Ex parte Hennen*, 13 Pet. 250 ; *State* v. *Somers*, 35 Neb. 322 ; *Speed* v. *Common Council*, 98 Mich. 360.

On the other hand, we have been referred to the cases of *State* v. *Brown*, 57 Mo. Appeals, 199, and *Hallgreen* v. *Campbell*, 82 Mich. 255. The Missouri case was not decided by the Court of last resort in that State, although by a Court entitled to very great respect for its learned decisions. The charter of St. Louis gave the commissioners of charitable institutions power to remove an appointed officer by an unanimous vote, but did not prescribe the method of procedure before removal. The Court held that the incumbent of a definite term was not removable, except for cause, when the removal was not expressly declared to be exercisable at pleasure. But there was an ordinance of the city in force which declared that " before any removal should be made, the person accused shall have a full, open and impartial hearing before the commissioners," and although the general doctrine was asserted in an unmistakable manner, it was not necessary for the purposes of the case, as the ordinance required a hearing.

In the Michigan case there was also a statement that would seem to sustain the appellant's contention, but in *Trainor et al.* v. *Board of County Auditors*, 89 Michigan, 162, reported in 15th L. R. A. 95, the Court, in answer to the citation of Michigan cases to sustain the position that the policy of the system of government of that State favored appointments for fixed periods and almost entirely rejected

the policy of removals at will, said that three of the cases cited were elective and the terms fixed by the Constitution, that in two the law expressly stated the method of procedure to be taken in removals, and that "in *Hallgreen* v. *Campbell* the power to remove certain officers at the pleasure of the council was expressly given in the same section of the charter that mentioned the marshal as an officer. He was not included among those that might be so removed. But this last case recognizes, as do others, in this State, the authority of the Legislature to authorize the removal of the appointive officers, such as the relators, at the will of the appointing power." Trainor and the other relators were appointed for a year, and were removed under a statute which gave the auditors power to remove any officer or agent appointed by them when in their opinion he was incompetent to execute properly the duties of his office or when, on charges and evidence, they shall be satisfied that he had been guilty of official misconduct or willful neglect of duty, etc. The Court held that no prior notice was necessary to remove for incompetency, as the statute made a distinction between the two classes of cases.

Without attempting the hopeless task of reconciling the authorities on all the questions, there is no conflict between them on some points. When the statute has given the appointing power authority to remove the appointee, although originally appointed for a definite term of years, it can be exercised. The point of divergence between the cases is as to how the removal can be accomplished when the law granting the power is silent on the subject. On the one side it is said that in such case it must be implied that the power can only be exercised *for cause* which admittedly requires notice, hearing, etc., while the other line of cases refuses to permit the Court to interpolate words that the Legislature did not see fit to use. As we see our lawmakers have declared the various causes for which certain officers may be removed, and have thereby declared they can only be removed *for cause*, but have in this instance

been silent on the subject, we think the safer rule to be to hold that they have thus manifested an intention not to limit the Governor, Treasurer and Comptroller to any particular cause or causes for removal of the Insurance Commissioner, and have thereby practically left it to their discretion, which of course must be honestly and fairly exercised. The order of the Court below will be affirmed.

*Order affirmed with costs to the appellee.*

(Decided June 19th, 1896).