[Civ. No. 7183. Second Appellate District. Division Two.—December 12, 1930.]

E. J. DELOREY, Appellant, v. THE BOARD OF PUBLIC WORKS OF THE CITY OF LOS ANGELES et al., Respondents.

Hill, Morgan & Bledsoe, L. E. Whitehead and E. H. Delorey for Appellant.

Hewitt, McCormick & Crump, Frank W. Stafford and Frank M. Smith for Respondents.

ARCHBALD, J., *pro tem.*—This is an appeal from a judgment in the court below discharging an alternative writ of mandate theretofore issued on application of the plaintiff and denying the petition for a peremptory writ.

July 1, 1928, appellant was appointed a member of the Board of Public Works of Los Angeles for a five-year term and as such member drew a salary of $500 per month, payable semi-monthly. On September 16, 1929, John C. Porter, the mayor of Los Angeles, notified appellant in writing that he had that day removed him from office as such member of the Board of Public Works subject to the assent of the city council. Thereafter and on the 27th of September the city council by an aye and no vote of ten to four assented to such action of the mayor. It was to compel the making and certifying of a salary claim for the last half of said month of September that appellant brought the action

in the court below, and from a judgment in favor of respondents this appeal is taken.

It is appellant's contention that his term was fixed by law at five years, and that the power of removal given by the charter containing no provision that it may be exercised without cause, notice or hearing, it is necessarily implied that removal shall be *only for cause,* after notice and hearing; that having been taken without notice, hearing or cause, the action of the mayor and council was invalid and appellant remained a member of the Board of Public Works, entitled to his salary, and that the court erred in not so finding and adjudging. No case has been found where this particular charter provision has been construed, but counsel have cited numerous authorities from other jurisdictions to sustain their respective positions. Typical in a general way as to one class of cases cited is that of *Hallgren* v. *Campbell,* 82 Mich. 255 [21 Am. St. Rep. 557, 9 L. R. A. 408, 46 N. W. 381], involving a street commissioner of the city of Menominee, Michigan, who had been appointed for the term of one year. The city council prior to the expiration of the term adopted a resolution providing that such commissioner ''be and he is hereby removed from office'' and declaring said office vacant. No notice was given the commissioner of the charges against him. Section 3 of the charter authorized the appointment by the city council of several officers, among them the street commissioners. Section 5 fixed the term of such commissioners, as well as other officers, at one year. Section 17 provided: ''Any person appointed to office by the council by authority of this act may be removed therefrom by a vote of the majority of the aldermen elect. . . . In case of elective officers provision shall be made by ordinance for preferring charges, and trying the same, and no removal of an elective officer shall be made unless a charge in writing is preferred and an opportunity given to make a defense thereto.'' It was claimed that because the section last quoted provided that elective officers could not be removed except for cause, the legislature intended that appointive officers might be removed without cause. The court said: ''In such a case the legislature may by express words confer upon the common council of a city the power to remove an officer without cause; but in the absence of such power given in ex-

press words the presumption must be that the legislature intended that every officer appointed for a fixed period should be entitled to hold his office until the expiration of such period unless removed therefrom for cause after a fair trial.'' It is true that section 3 of the charter referred to also provided for the removal of certain officers at pleasure, naming them, but it did not include the street commissioner, although the same section provided for his appointment as well as that of other officers named. Other general classes cited are where the statute or charter fixes the term of office and no power of removal is given the appointing officer or body (*People* v. *Jeyett,* 6 Cal. 291; *Page* v. *Hardin,* 8 B. Mon. (Ky.) 648; *State* v. *Kuehn,* 34 Wis. 229), and where the term is fixed by one section of the charter and the power to remove *for cause* is given by another (*Matter of Carter,* 141 Cal. 316 [74 Pac. 997, 998] ; *Bannerman* v. *Boyle,* 160 Cal. 197 [116 Pac. 732].)

The case of *Matter of Carter, supra,* involved the charter of the city of San Diego, which provided as follows, the italics being ours: ''The mayor shall appoint all officers whose election or appointment is not otherwise specially provided for in this charter or by law. He shall have power to remove, *for cause,* any person holding office by his nomination or appointment; *and in case of such removal shall give written notice thereof, stating the cause, to the person removed,* and shall immediately notify the common council of his action and the reasons therefor.'' (Charter of San Diego, art. III, sec. 7, Stats. 1889, p. 661.) The court held that the mayor was not exercising a judicial function under the language quoted, as the notices to be given were after the removal and merely for the purpose of informing the officer of the reasons for removal and of making a record.

In the case of *Bannerman* v. *Boyle, supra,* the charter of the city of San Francisco was under consideration. Bannerman was appointed by the mayor in 1909 as a member of the board of education to fill an unexpired term ending January 8, 1911. Without any notice or hearing the mayor, on February 1, 1910, removed or attempted to remove him from office and appointed one Power to fill the vacancy assumed to have been so created. Bannerman refused to vacate the office and denied the validity of the act of removal. The charter of San Francisco in effect then (Stats.

1899, pp. 241–367) provided in section 1 of article VII (p. 317) that such board should consist of four directors appointed by the mayor for a term of four years, so classified that the term of one of them expired each year. Section 18 of article XVI (p. 361) provided that any appointed officer might be removed by the mayor for cause. Speaking on the question of removal from office, the court says, at page 205 of the opinion: "Upon this question the great weight of authority is to the effect that where an officer is appointed for a fixed term and it is provided that he may be removed during the term 'for cause', without other qualifying words, such removal cannot be made except after notice and a hearing."

The case of *State* v. *Brown*, 57 Mo. App. 199, is in the same general class as that of *Hallgren* v. *Campbell, supra,* and the court in commenting on the reason for the rule says: "It is fixity of tenure that destroys the power of removal at pleasure otherwise incident to the appointing power. (*State* v. *Police Commissioners*, 14 Mo. App. 302.) The reason of this rule is the evident repugnance between the fixed term and the power of arbitrary removal. The effect of this rule is that the right to hold during a fixed term can only be overcome by an express grant of power to remove at pleasure. An inferential authority to remove at pleasure cannot be deduced, since the existence of a defined term, *ipso facto*, negatives such an inference, and implies a contrary presumption, i. e., that the incumbent shall hold to the end of his term, subject to removal for cause."

It is to be noted that in all of the cases of the general classes mentioned the terms of office is fixed in one section of the charter or other law, without any reservation of the right of removal, and the power to remove is given in another section. This brings us to the consideration of another class of cases where the tenure of office by the very terms of its creation is subject to the power of removal. In *Sweeney* v. *Stevens*, 46 N. J. L. 344, a jailer who had been appointed by the board of freeholders for a five-year term was by the affirmative votes of two-thirds of the members removed from office before the expiration of the term. The statute under which both acts were taken reads: " . . . The board of freeholders shall appoint some proper person to be the jailer or keeper of the jail of said county, who

shall hold his office for the term of five years, and until another be appointed in his stead; but such jailer may at any time be removed from office by a vote of two-thirds of all the chosen freeholders of the said county for the time being.'' The court in speaking of such section said: ''This language is plain, and seems clearly to authorize the removal of the defendant in the mode in which it has been attempted. We have been referred to no judicial decision, and are aware of none, which would justify our engrafting upon it any provisions to defeat the power that it appears to confer. The legislature, in creating the office, had the right to provide for its vacation in such manner as they saw fit, and in ascertaining what the manner is we must take their language in its ordinary import.''

In *State* v. *Somers*, 35 Neb. 322 [53 N. W. 146], the commissioner of health of the city of Omaha was removed from office before the expiration of the two years for which he was appointed. The section under which he was appointed, so far as material to his office, reads: ''Said commissioner of health shall be appointed by the mayor, subject to the approval of a majority of the council, and shall hold office for two years from date of appointment, unless sooner removed or retired.'' The officer so removed brought a *quo warranto* proceeding to determine the right of the defendant, appointed in his place, to the office. The writ was denied and the action dismissed, the court using the following language: ''An examination of the several sections of the act shows that certain officers, like the board of public works, consisting of three members, are appointed for one, two and three years, and there is a provision for filing specific charges against each of the members of such board, and removing the person adjudged to be guilty. Where an office is held in that way there can be no removal except for cause. Where, however, the right of removal is reserved in the appointing power, without the necessity of making charges, it may be exercised in the discretion of the appointing power, even before the expiration of the term.''

In the case of *Commonwealth* v. *Harriman*, 134 Mass. 314, an information in the nature of a *quo warranto* was filed by the attorney-general at the relation of Joseph M. Day to try the title to the office of judge of probate and insolvency for the county of Barstable. The relator was appointed to

the office in 1858 to hold the office during the term of his good behavior therein, "unless sooner removed" in the manner prescribed by the Constitution. He was removed from office in 1882 by the Governor of the state, with the consent of the council, upon the address of both houses of the legislature, and the defendant was appointed in his place. The language of the Constitution under which he was appointed and removed, so far as applicable, is as follows: "All judicial officers, duly appointed, commissioned and sworn, shall hold their offices during good behavior, excepting such concerning whom there is different provision made in this Constitution; provided, nevertheless, the governor, with consent of the council, may remove them upon the address of both houses." (Const. Mass., chap. 3, art. I.) It was contended by the relator that the only effect of the proviso was to give the power of removal by address for causes not covered by the provision of the Constitution for impeachment. In regard to this contention the court said: "We are not able to see any just rule of construction by which we can thus limit and qualify the plain language of the proviso. The language is broad and general; in its terms it includes a removal for any cause which is deemed by the legislature and executive departments sufficient. If it had been intended to exclude from this provision the power to remove for misconduct in office, leaving that to be dealt with by impeachment exclusively, it would have been so stated. Neither this article nor the article on impeachment contains any indication that the power of impeachment was to exclude the power of removal by address. We must give to the proviso the broad meaning which its language imports. The article reaffirms the great principle asserted in the Declaration of Rights, that judicial officers shall hold their offices during good behavior; but it was deemed wise, as a check upon the absolute power and independence of the judicial department, to confide in the other two co-ordinate branches of the government the exceptional power of removing judicial officers by address when an exigency requires it, of which, from the nature of the case, they must be the sole judges. The obvious and natural meaning of the language used seems to us to require this construction, and our view is confirmed by the history of this provision." The court reinforces its conclusion by going into the history of the adoption of

the amendment of the Constitution, which showed that the convention refused to adopt a proviso in practically the language quoted but did adopt an amendment providing that no address for the removal of any judicial officer should pass either house of the legislature until the causes of such removal were first stated and entered in the journal and served on the officer charged, "so that he may be admitted to a hearing in his defense in both houses". Such amendment, however, was rejected by the people. The court, on page 328 of its opinion, uses this further and very significant language: "The relator strongly contends that, upon this construction of the Constitution, the tenure of judicial office is not during good behavior, but at the will of the other departments of the government. It seems to us that this is arguing against the existence of a power clearly conferred, from the fact that it may be abused and perverted. There is no more danger of the abuse of the power of removal, if it includes the right to remove for impeachable offenses, than there would be if it were confined, as the relator contends it should be, to cases of physical, mental or moral disability of a judicial officer, of which necessarily the removing power must be the sole judge. Any power may be abused. The judiciary might corruptly declare any law or body of laws to be unconstitutional and invalid, and thus encroach upon the powers of the legislature; yet no one doubts the right and duty of the judiciary to declare invalid any law which in its judgment violates the Constitution. In confiding to the two coordinate branches of the government this important and exceptional power of removing the judiciary, the people found a sufficient protection to the substantial independence of the judicial department in the constitutional guaranties thrown around it, in the fact that the removal can only be made by the concurrent action of both houses of the legislature and of the governor and council, all of whom are directly answerable to the people at frequently recurring periods, and in the trust and confidence they may rightfully repose in their servants and agents that in the exercise of any power committed to them they will act in obedience to their oaths of office, and in the spirit of the fundamental principles of the Constitution."

It is to be remembered that officers appointed during good behavior come under the same rule as to the neces-

sity of preferring charges, etc., as those appointed for a fixed term. (Mechem on Public Officers, sec. 454.)

The case of *Townsend* v. *Kurtz*, 83 Md. 331 [34 Atl. 1123], was one involving the title to the office of insurance commissioner of the state. Townsend was appointed as insurance commissioner under a statute providing that such officer "shall be appointed by the governor, treasurer and comptroller for the term of four years . . . and shall hold office during the term for which he is appointed, or until his successor is appointed and qualified, unless sooner removed by the governor, treasurer and comptroller". Townsend qualified and entered upon the duties of his office. The following March the then Governor, comptroller and treasurer adopted a resolution removing him from office. No charges were filed against him and he was removed without prior notice or hearing. Faced with the great conflict in the decisions on the question, the court, on page 331 of 83 Md. [p. 1127, 34 Atl.] of the opinion, says: "Without attempting the hopeless task of reconciling the authorities on all the questions, there is no conflict between them on some points. When the statute has given the appointing power authority to remove the appointee, although originally appointed for a definite term of years, it can be exercised. The point of divergence between the cases is as to how the removal can be accomplished when the law granting the power is silent on the subject. On the one side it is said that in such case it must be implied that the power can only be exercised for cause, which admittedly requires notice, hearing, etc., while the other line of cases refuses to permit the court to interpolate words that the legislature did not see fit to use. As we see our lawmakers have declared the various causes for which certain officers may be removed, and have thereby declared they can only be removed for cause, but have in this instance been silent on the subject, we think the safer rule to be to hold that they have thus manifested an intention not to limit the governor, treasurer and comptroller to any particular cause or causes for removal of the insurance commissioner, and have thereby practically left it to their discretion, which, of course, must be honestly and fairly exercised."

Taking up the charter of Los Angeles (Stats. 1925, p. 1028), we find that the people adopting it so framed it

that out of the army of officers and employees needed to carry on the very extensive and complicated functions connected with the government of a great city they have retained the right to elect only the following: Mayor, city attorney, controller, members of the board of education and of the city council. All others are appointive and different methods of both appointment and removal are provided. The city clerk is appointed by and "may be removed by the mayor, subject in both appointment and removal to confirmation by the council and to the civil service provisions of this charter" (sec. 44). The city engineer is appointed by the Board of Public Works and holds office "at the pleasure of the board" (sec. 49). The purchasing agent is appointed and may be removed by the mayor, subject in both appointment and removal to confirmation by the council and to the civil service provisions of the charter (sec. 55). The treasurer is likewise appointed and removed (sec. 58). The city prosecutor is appointed by the mayor, subject to confirmation by the council (sec. 51), but the section of the charter relating to appointment is silent on the question of removal. No terms of office are fixed for the above appointive officers, but section 11 provides that "in case of appointive officers the appointing power shall have power of removal, except that where confirmation is required for appointment the consent of the confirming body shall be required for removal, and where the officer is appointed subject to the civil service provisions of this charter, such removal shall be in accordance therewith, except as elsewhere specifically provided in this charter". No term being fixed as to such officers there could be no question of repugnance between tenure of office and the power of removal; but as to those under civil service rules there must be cause shown, although otherwise they would be holding at the pleasure of the appointing power.

The mayor is "the executive officer of the city and shall exercise a careful supervision over all its affairs" (sec. 40 [1]). It is his duty annually to communicate by message to the council a general statement of the condition and affairs of the city (sec. 40 [2]), and it is his duty "to be vigilant and active in the enforcement of the ordinances of the city; to exercise a constant supervision over the acts and conduct of all officers and employees" (sec. 40 [3]).

It is apparent from the foregoing that the mayor is the active and responsible head of the city government, notwithstanding the fact that by reason of necessity the administrative work is performed under the immediate supervision and direction of the various departments of the city, one of which is the department of public works with which we are here concerned. It is reasonable to suppose that it was the intention of the legislature and the citizens of Los Angeles, having placed such a responsibility on the mayor, to provide him with administrative officers with whom he was satisfied, without requiring him to go to the extreme of preferring charges, notice and hearing, etc., in order to remove them. And so the charter seems to read. Considering the fact that the appointment is made by the responsible executive head of the city government, with the approval of a majority of the council, it is probable that the character and ability of the men appointed to the important administrative boards of the city would in all cases be such that the only dissatisfaction the mayor would have with any of them would arise from a difference in views as to the policies of handling the work of the particular department. The framers of the charter undoubtedly realized and intended that in such matters the mayor should have the right at all times to have heads of departments in sympathy with his policies of administration, and to prevent any abuse of such right limited the power to remove an incumbent only by requiring the assent of a majority of the body concurring in the appointment. The plain language of the charter indicates such an intention and there seems to be nothing that calls for the interpolation of words to change it.

█ The Los Angeles city charter, under which the appointment and removal in question here were made, provides for the establishment of a Board of Public Works consisting of five members, and that ''the members of the Board of Public Works shall be appointed and shall organize and conduct the business of the Board in the manner provided in sections 72, 73, 74, 75, 76, 77, 78, 84 of this charter relating to citizen boards'' (sec. 230, Stats. 1925, p. 1099). The sections of the charter above referred to relating to appointments are as follows: ''Sec. 72 [p. 1056]. The terms of the commissioners . . . shall be five years, except as otherwise provided in sec. 73 . . . '' ''Sec. 73

[p. 1056]. The members of each of the boards . . . shall be appointed, and may be removed by the mayor, subject in both appointment and removal to the approval of the council by a majority vote.''

The term to which the members of the board are appointed is not "five years", but five years *unless sooner removed* by the mayor with the approval of the council (secs. 72 and 73). Such is the clear language of the two sections read together, as they must be. Section 72 says the term shall be five years except as provided in section 73, and such section provides that the members of each board "may be removed by the mayor", etc. So the term is five years if the member is not removed prior to that time in the manner provided in the section. The language of sections 72 and 73 applies to all the administrative boards for whose acts the mayor, as executive of the city, is directly responsible. It does not say removed *for cause, or removed* after *charges preferred,* but *"shall be appointed and may be removed by the mayor, subject in both appointment and removal to the approval of the council by a majority vote".* It is an express grant to the mayor the responsible executive head of the city government, of the general power of removal, the only limitation being that such act is subject to the approval of the council. ''The grant of a general power to remove carries with it the right to remove at any time or in any manner deemed best, with or without notice.'' (*Eckloff* v. *District of Columbia,* 135 U. S. 240 [34 L. Ed. 120, 10 Sup. Ct. Rep. 752].) The grant of power concerning which the United States Supreme Court used such language was to ''remove from office'', and the court said if that was all the legislation ''there would be no question'', but there was a contention made that the unrestricted right of removal so given was limited by the provisions of prior statutes. Is there anything in the charter that places any additional or further limitation on the right granted here, other than the one requiring the approval of the council? It is clear that there is nothing in the sections cited, unless the five-year tenure is to be so construed. In the instant case there is no repugnance between the fixed term and the power of removal, because, as we have pointed out, the fixed term is itself expressly made subject to that power;

so there is no reason for adding words to language that is unequivocal.

■ Appellant contends that the rule urged by respondents would destroy the scheme of the charter, which provides for the expiration of terms of members of the different boards at different times so that if a new member is appointed at the expiration of each term there would still be on the board experienced members. The answer to that is that we cannot assume that any responsible executive would so jeopardize his administration by any such foolish act; and even though one might be so unwise, still that of itself is no reason why the courts should make the charter foolproof in that regard by judicial legislation. The remedy, if one is needed, is with the people who elect the mayor and whose charter it is.

It also is urged that if the contention of respondents is sustained it will mean the making of all of the officers personally subservient to the mayor, bring back the spoils system and make the government of the city a one-man affair. The people in adopting the charter were satisfied, however, to place the responsibility on the mayor elected by them, subject only in the exercise of the power of removal, so far as the members of the various departmental boards are concerned, to the approval of a majority of the council, an independent branch of the city government whose members are themselves elected by the people; and it is not for us to assume that such officers are not interested in conscientiously executing the trust reposed in them. And even if they were not, we could not close our eyes to the existence of a power so clearly conferred simply because it might not be exercised in the way it should.

■ It would seem, however, that the act of removal was not complete until assented to by the council. That occurred September 27th, and until then appellant was a member of the board and entitled to compensation as such. So far as the record shows, therefore, the lower court should have issued a peremptory writ of mandate to respondents to compel the payment of the salary due appellant for the intervening twelve days. In that particular the judgment of the lower court will be modified, and such court is instructed to issue a peremptory writ of mandate to the respondents Board of Public Works of the City of Los An-

geles, Hugh J. McGuire, Arthur Eldridge, A. W. L. Dunn and James Hyde, members of said board, and Horace B. Ferris, as secretary and chief accounting employee of said board, commanding them to certify and file the salary claim of appellant for the sum of $200, being his salary from September 15 to September 27, 1929, and to respondent John S. Myers, controller of said city, commanding him to issue a pay check or warrant to pay said claim. As so modified the judgment is affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.

. A petition for a rehearing of this cause was denied by the District Court of Appeal on January 9, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 9, 1931.