Thomson, J.,
delivered the opinion of the court.
This is a proceeding under the statute to try the title to the office of general road overseer of the county of Douglas. At its January meeting, 1892, held on the 7th day of January, being the first Monday of the month, the board of county commissioners, by resolution, appointed the relator. *157 William W. Jones, general road overseer of the county, who thereupon filed with the clerk of the county a bond in the sum required by the board, conditioned as required by law, which was approved by the board. The board which made the appointment was the outgoing board. At the preceding general election a new commissioner had been elected to succeed the'one whose term of office was about to expire, and, at a special meeting of the commissioners elect, called for the purpose of organizing them into a new board, and held on the 12th day of January, 1892, a resolution was adopted, removing the relator from the office, and appointing in his stead the defendant, who thereupon filed with the clerk a bond which was approved by the board, and took possession of the office, expelling the relator. The defendant had judgment, from which the relator has prosecuted error.
The law under which the relator was appointed, is found in the act concerning roads and highways, approved April 18, 1891. Sess. Laws, 1891, p. 303. That act provides for the division by the board of county commissioners of their counties into suitable road districts, as in their judgment will best subserve the interests of the people of the county; and, further, that at their January meeting the county commissioners in each count}7 shall, by resolution, appoint a general road overseer for the county, who, before the expiration of his term, may be removed by the board for reasons satisfactory to them; that before entering upon the duties of his office, he shall file with the clerk of the county wherein he is appointed, a bond, in such sum as the board of county commissioners may require, with good and sufficient sureties to be approved by the board, conditioned for the faithful performance of his duties, etc.; that it shall be his duty to exercise a general supervision of all the public roads, highways and bridges in the county,- and, by and with the advice and consent of the board of county commissioners, to appoint such deputy road overseers as the board of county commissioners may, by resolution, authorize him to appoint, who *158 shall hold their office at the pleasure of the board of county commissioners, and shall exercise the powers of general road overseer within their respective districts under the direction and control of the general road overseer.
Prior to the passage of that act the law required counties to be divided by the boards of commissioners into road districts, in each of which a road overseer should be elected annually, in the same manner as district and precinct officers, who should hold his office for one year, or until his successor should be duly qualified. Sess. Laws, 1889, p. 330. The regular term of office of a county commissioner commences on the 2d Tuesday of January after his election. Gen. Stats., 1883, sec. 1160. The statute further provides that each board of county commissioners shall meet at the county seat on the first Monday in January, April, July and October in each year, and at such other times as in the opinion of the board the public interests may require; (Gen. Stats., sec. 531 ’;) and, at the first meeting after each annual election, shall choose one of their number chairman, who shall preside at their meetings during the year, if present. Gen. Stats., sec. 543. The January meeting, occurring on the first Monday of January, must, therefore, be held by the old board, because the term of the new board has not yet commenced, and it is at this meeting that the law requires the appointment to be made. We cannot concede the position of counsel that this appointment by the old board was premature, because the terms of the district officers elected the preceding year had not expired, and because it was not the intention of the law to commit to the old board the appointment of an officer to act under their successors. The office of district overseer was statutory, and it is competent for the legislature to abolish an office which it has created; and, under the act of 1891, upon the appointment, at the January meeting, of a general road overseer, atid of the deputies provided for to take the place of the district road overseers, the office of district overseer became defunct. There is no room for a construction of the law; it carries its meeting upon its *159 face; it is within the comprehension of any one who reads it, and the appointment of the relator, at the time when made, and by the board as then constituted, was in exact conformity with its provisions. The relator, having qualified as required, was invested with title to his office, and the only question is: Was he legally removed?
If there was such removal it was effected at a special meeting of the commissioners, held on the 12th day of January, and called by one of the commissioners for the purpose of organizing them into a board. The board consisted of three members, but only two were present when the organization was effected, and the resolution of removal adopted; and the third had no knowledge that, aside from organization, any action was contemplated. No charges were preferred against the relator, he was not present, no hearing was had, and no notice was given to him that any action looking to his removal would be taken. The resolution declared the office vacant, and the relator removed from it, “ for reasons satisfactory to the board.” The position of relator’s counsel is that it was not competent for the board to make the removal without notice and hearing. If the statute authorized the board to remove an incumbent for certain specified causes, or for due cause, or sufficient cause, or limited their authority to remove by some equivalent expression, an inquiry would be necessary, and the officer would be entitled to notice of the charges against him, and of the time and place of hearing. But the law invests the board with the power of removal for any reason satisfactory to them. Such reason may be an entirely insufficient one, or amount, practically, to no reason at all; it may be mere caprice, but, whatever the reason may be it cannot be inquired into, it need not even be stated, and the action of the board in the case is final. The effect of the language is to vest in the board a power, the exercise of which is absolutely discretionary with them; and it is well settled that where an appointment is during pleasure, or for a fixed period with a discretionary power of removal, the office may be vacated and the removal made ex parte.
*160 A statute of Massachusetts provided that' officers and boards of the city of Boston might remove their subordinates for such cause as they might deem sufficient and should assign in the order of removal. In O’Dowd v. Boston, 149 Mass. 443, the supreme court held that the language of the statute contemplated a summary removal, without charges or hearing. In State v. McGarry, 21 Wis. 502, the following statutory provision, defining the powers of the board of supervisors of Milwaukee count}' for the regulation and management of the House of Correction in that county, was construed : “ Said board shall also appoint one inspector for said House of Correction, who shall be the principal keeper of said House of Correction, and who shall hold his office for the term of two years, commencing on the first Monday of January succeeding his appointment, unless sooner removed by such board for incompetency, improper conduct or other cause satisfactory to said board.” The court held that this language empowered the board to remove the inspector without notice to him, and without any examination of witnesses, formal or otherwise. An enactment in New York conferred authority upon the mayor to remove from office any police commissioner “for any cause deemed sufficient to himself.” Construing the act, the court of appeals said: “ No opportunity to be heard is given, and it is enough if the mayor thinks there is sufficient cause. It may or may not exist except in his imagination, but his conclusion is final.” People v. Gere, 92 N. Y. 191. See, also, People v. Trimble, 19 Colo. 187, 198.
But it is contended that the board had no power to remove the relator at the meeting at which he was removed, because it was called for the purpose only of organizing the board,- and in the absence of one of the members no further action could be taken. The statute provides for such organization by the election of a chairman at the first meeting of the commissioners after every annual election. Whether the words “first meeting” mean the first regular meeting, or.whether a meeting may be called sooner for the purpose- of organiza *161 tion, it is not necessary to decide; but, assuming that this meeting was legally called and convened for the special purpose named, was the action of the board, after the purpose was accomplished, in removing the relator, regular, or in conformity with law ? The powers of the board are statutory, and are limited by the terms of the statute. No authority is conferred upon them to transact any business except at meetings held at the times prescribed by the statute, or at such other times as in the opinion of the board the public interest may require. The necessity for such further meetings and the times of holding them are left to the exclusive determination of the board. The statute is silent as to the manner in which their opinion upon the subject shall be expressed, and as to how the meetings shall be convened. Of course, at any legal meeting, after organization, another meeting may be ordered and the time for it fixed; the members would be bound to take notice of the fact of its being ordered; and if a quorum is in attendance at such subsequent meeting, its proceedings will be regular. But unforeseen contingencies may arise after a meeting has adjourned which require action before the date fixed by statute, and some other method of convening the board must be resorted to. In such case, if the board should voluntarily come together, or should be gotten together in any manner, the fact of the transaction of business at the meeting so held, would probably be a sufficient expression of their opinion of the necessity of the meeting; but as the statute does not confer upon any one member the authority to call such meeting, and as it belongs to the board alone to judge of the propriety of holding it, and their judgment can be expressed only after they come together, to make the meeting one at which such expession can be given, all the members must be present. After being' organized by the election of a chairman, the board was prepared to hold meetings for the transaction of business, but no meeting had been ordered for that purpose, and the statutory day would not occur until the first Monday of the following April. Nevertheless, two of tiie commissioners, after the organization, as *162 sumed to hold a meeting, at which the third was not present, .and of which he had no knowledge, and adopted the resolution removing the relator, and appointing the defendant. •This action cannot be upheld. It was clearly without authority of law. 'The removal and appointment were both illegal. The title of the relator to the office was not divested, and the appointee acquired none. Judgment ousting the defendant and putting the relator in possession should have been given; and the judgment of the court otherwise was error.
The judgment must be reversed.

Reversed.