John A. MITCHELL, Plaintiff-Appellant,

v.

Bruce KING, Governor of the State of
New Mexico, et al.,
Defendants-Appellees.

No. 75–1412.

United States Court of Appeals,
Tenth Circuit.

Argued March 24, 1976.

Decided June 22, 1976.

John A. Mitchell of Mitchell, Mitchell, Alley & Morrison, Santa Fe, N. M. for plaintiff-appellant.

Thomas Patrick Whelan, Jr., Asst. Atty. Gen., Santa Fe, N. M. (Toney Anaya, Atty. Gen., Santa Fe, N. M. on the brief), for defendants-appellees.

Before BREITENSTEIN, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

John A. Mitchell (Mitchell) appeals from the Order of the District Court granting appellee's Motion to Dismiss the Complaint and cause of action for failure to state a claim upon which relief can be granted.

When a complaint and action are dismissed for failure to state a claim upon which relief can be granted, it must appear beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Dewell v. Lawson,* 489 F.2d 877 (10th Cir. 1974); *Hudson v. Harris,* 478 F.2d 244 (10th Cir. 1973); *Williams v. Eaton,* 443 F.2d 422 (10th Cir. 1971). A motion to dismiss under Fed.Rules Civ.Proc., rule 12(b) admits all well-pleaded facts in the complaint as distinguished from conclusory allegations. *Jones v. Hopper,* 410 F.2d 1323 (10th Cir. 1969), cert. denied, 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970). The factual allegations of the complaint must be taken as true and all reasonable inferences from them must be indulged in favor of the complainant. *Williams v. Eaton, supra, Olpin v. Ideal National Insurance Co.,* 419 F.2d 1250 (10th Cir. 1969), cert. denied, 397 U.S. 1074, 90 S.Ct. 1522, 25 L.Ed.2d 809 (1970).

Mitchell claims jurisdiction under 28 U.S.C. § 1343(3) and (4) and asserts claims under 42 U.S.C. § 1983 to redress alleged deprivation under color of state law of certain rights secured to him by the Constitution of the United States. He also seeks declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202 and Fed.Rules Civ.Proc., rule 57.

*Allegations of Complaint*

Mitchell's complaint alleges: That on or about July 20, 1971, then Governor Bruce King (King) appointed him (Mitchell) to the Board of Regents of the Museum of New Mexico to serve a six-year term pursuant to § 4–12–5, N.M.S.A., 1953 Comp.; that at the time of his appointment, he was a practicing attorney at law and a reputable citizen of the State of New Mexico; that the

Board of Regents is responsible for the management and control of the Museum under specific statutory powers; that Board members serve independently and not at the pleasure of the governor; that about August 16, 1973, the Board elected Mitchell to serve as its Treasurer and Mrs. Mayer to serve as its President; that prior to a meeting of the Board scheduled for June 19, 1974, Mrs. Mayer indicated her desire to be re-elected President; that a majority of the Board members (including Mitchell) decided prior to the June 19th meeting that Mrs. Mayer should not be re-elected President; that this decision was communicated to David King; that Mrs. Mayer and David King then advised Governor Bruce King that the majority of the Board did not desire to re-elect her as President; that on June 17, 1974, Governor King telephoned Mitchell and informed him of his (King's) desire to have Mrs. Mayer re-elected President, but that if this could not be accomplished he wished to appoint one Tibo Chavez as her successor; that Governor King made similar calls to Board members Frank Bateman and W. J. Keller and he attempted to contact Mrs. Edmando R. Delgado; that on June 18, 1974, Mitchell wrote a letter to Mrs. Mayer in which he asked her to resign from the Board because she had injected politics into its affairs by obtaining the intervention of the governor and on the same date Mitchell advised the governor of his letter to her; that on June 25, 1974, Mitchell was informed by members of the press that the governor had requested his resignation from the Board; that on June 28, 1974, Mitchell received a letter from Governor King requesting his resignation from the Board and thanking him for the participation, time and energy he had contributed to the Board; that on July 3, 1974, Mitchell acknowledged Governor King's request and promised to consider it; that on July 15, 1974, Mitchell met with Frank DiLuzio, acting pursuant to Governor King, and in concert with David King and Mrs. Mayer, during which Mitchell was advised of Governor King's desire to provide the Board with a broader geographic distribution; that Mitchell responded that the governor's interference with the affairs of the Board created an issue of principle and conscience; that DiLuzio then advised Mitchell that the governor would attempt to remove him if he did not resign; that on July 25, 1974, Mitchell responded to DiLuzio by letter advising that Governor King's intervention on behalf of Mrs. Mayer had presented a challenge to the integrity of the Board and that he (Mitchell) had been singled out for removal only after he exercised his right of free speech regarding the election; that on August 2, 1974, DiLuzio delivered a notice signed by Governor King advising Mitchell that King had removed him as a Regent of the Museum under authority of Article V, Section 5 of the Constitution of New Mexico for "neglect of duty and malfeasance", said removal to be effective on August 2, 1974; that Mitchell rejected the opportunity to resign before the notice of removal was made public; that Mitchell had served faithfully, competently and with integrity as a member of the Board and as Treasurer; that the defendants purported to act knowingly and under color of the Constitution of the State of New Mexico and that they acted wilfully, maliciously, and intentionally to deprive Mitchell of his federal constitutional rights as guaranteed him by the First, Fifth and Fourteenth Amendments to the Constitution of the United States. Mitchell prayed for compensatory and punitive damages, costs and declaratory relief.

### Trial Court Disposition of Motion to Dismiss

The Trial Court granted the Motion to Dismiss after the respective parties filed detailed briefs. The Order regarded all of the allegations of the complaint as facts. The Court found that Mitchell's claims are grounded upon three separate legal theories: (1) that the defendants wrongfully removed Mitchell from the office of Regent of the Museum of New Mexico contrary to the law of New Mexico; (2) that his removal from the office of Regent deprived him of property and liberty interests without due process of law, contrary to the Four-

teenth Amendment; and (3) that he was removed from the office of Regent in retaliation for exercising his right of free speech contrary to the First and Fourteenth Amendments.

The Court found, in granting the motion to dismiss, that (a) Mitchell has no protected property interest in the office of Regent by virtue of Art. V, Sec. 5, N.M.Const. and the ruling of the New Mexico Supreme Court in *Ulrick v. Sanchez*, 32 N.M. 265, 255 P. 1077 (1927), (b) Mitchell has no liberty interests which were infringed by the nature or circumstances of the dismissal, relying upon *Adams v. Walker*, 492 F.2d 1003 (7th Cir. 1974), and (c) Mitchell's First Amendment rights in making public comment must be balanced against the state executive's interest in effectuating his policy decisions and that a Regent of the Museum occupies an office to which is delegated policy making responsibilities of the executive and that the chief state executive, having relied upon his appointee as one who would display political or personal loyalty, has a substantial interest in the effective supervision of the officers to whom he has delegated policy making powers, citing to *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), *Illinois State Employees Union, Council 34, etc. v. Lewis*, 473 F.2d 561 (7th Cir. 1972), cert. denied, 410 U.S. 928, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973); *Indiana State Employees Association, Inc. v. Negley*, 501 F.2d 1239 (7th Cir. 1974) and other cases. In light of the Trial Court's dismissal of the two federal claims, the Court found that it was appropriate to decline pendent jurisdiction over Mitchell's claim that his dismissal as Regent was contrary to New Mexico law.

### Appellate Contentions

On appeal, Mitchell presents the following contentions: (1) that his removal and revocation as an appointee Regent to the Museum of New Mexico was violative of his rights to free speech secured to him by the First Amendment to the Constitution of the United States and taken in retaliation therefore when he spoke out; (2) that his removal and revocation as Regent aforesaid

for causes set forth in the New Mexico Constitution, without notice and an opportunity to defend, constituted a deprivation of his property and liberty without due process of law guaranteed to him by the Fifth and Fourteenth Amendments to the Constitution of the United States and (3) that the complaint should not have been dismissed on the basis that it failed to allege any claims which would, under any state of facts, entitle Mitchell to relief.

### I.

We focus initially on the rule that the construction of a state constitution or statute is a matter of state law and that the most authoritative construction is that made by the highest court of the state. *O'Brien v. Skinner*, 414 U.S. 524, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974); *Hardberger and Smylie v. Employers Mutual Liability Insurance Company of Wisconsin*, 444 F.2d 1318 (10th Cir. 1971).

The Trial Court found that Mitchell had no protected interest in the office of Regent of the Museum of New Mexico by virtue of Art. V, Sec. 5 of the New Mexico Constitution as interpreted and construed by the Supreme Court of New Mexico in *Ulrick v. Sanchez, supra.*

The New Mexico Constitution vests "the supreme executive power of the state" in the governor. N.M.Const., Art. V, § 4. As an incident thereto, the governor is authorized to appoint by and with the consent of the state senate ". . . all officers whose appointment or election is not otherwise provided for, and may remove any officer appointed by him for incompetency, neglect of duty or malfeasance in office . . . ." N.M.Const., Art. V, § 5.

Art. V, § 5, *supra*, was construed and interpreted by the New Mexico Supreme Court in the case of *Ulrick v. Sanchez, supra*. There, the Court in upholding the power of the governor to remove two state tax commissioners who had been appointed for terms of six years said, *inter alia*:

. . . [T]he Governor had the power under section 5 of article 5 of the Constitution to remove Mr. Ulrick and

Mr. Chavez without hearing or notice, and the courts have no jurisdiction to pass upon the sufficiency or insufficiency of the evidence; the only judicial question being whether the cause assigned was a legal cause. The process of arriving at this conclusion is one of construction of our Constitution.

255 P. 1077 at 1081.

The *Ulrick* opinion further stated:

It is the Governor, the chief executive, who is held responsible to the sovereignty for errors in his executive and administrative policies. The appointee is responsible to the chief executive . . .

255 P. 1077 at 1086.

■ This Court has consistently held that when the interpretation of state law is involved, the federal courts must first determine whether the state courts have expressly passed on the issue and, if so, such decision or decisions provide clear precedence. *United States v. Wyoming National Bank of Casper*, 505 F.2d 1064 (10th Cir. 1974); *Hardy Salt Company v. Southern Pacific Transportation Company*, 501 F.2d 1156 (10th Cir. 1974), cert. denied, 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974); *Hardberger and Smylie v. Employers Mutual Liability Insurance Company of Wisconsin*, 444 F.2d 1318 (10th Cir. 1971). And the interpretation and construction of state statutes (and constitutions) by the highest courts of the states will be followed by the federal courts unless those interpretations are inconsistent with fundamental principles of liberty and justice. *O'Brien v. Skinner, supra; Pearce v. Cox*, 354 F.2d 884 (10th Cir. 1965), cert. denied, *Charlton v. Cox*, 384 U.S. 976, 86 S.Ct. 1869, 16 L.Ed.2d 685 (1966); *Goldsmith v. Cheney*, 447 F.2d 624 (10th Cir. 1971).

For decisions from other state jurisdictions which have upheld the governor's power of removal of a state appointee serving for a fixed term, without notice or cause, under provisions very much akin to Art. V, § 5, *supra, see Beasley v. Parnell*, 177 Ark. 912, 9 S.W.2d 10 (1928); *Townsend v. Kurtz*, 83 Md. 331, 34 A. 1123 (1896); *State ex rel. Ayers v. Kipp*, 10 S.D. 495, 74 N.W. 440 (1898); *State ex rel. McReavy v. Burke*, 8 Wash. 412, 36 P. 281 (1894). In *People ex rel. Jones v. Carver*, 5 Colo.App. 156, 38 P. 332 (1894) the general principle was laid down: "where an appointment is during pleasure, or for a fixed period, with a discretionary power of removal, the office may be vacated and the removal made ex parte." *Contra: See* cases cited in 38 Am. Jur.2d, Governor, § 8.

■ The courts have uniformly ruled that because the office of governor is political, the discretion vested in the chief executive by the constitution and laws of the State respecting his official duties is not subject to control or review by the courts. 38 Am.Jur.2d, Governor, § 10.

The New Mexico constitutional provisions cited, as construed and interpreted by the highest court of that state in *Ulrick* foreclose Mitchell's claims unless there is merit in this allegation that his federally protected rights as guaranteed him under the Fourteenth Amendment to the Constitution of the United States have been violated. There must, of course, exist a substantial federal question which would give rise to federal court jurisdiction under the circumstances of the case. *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

■ Furthermore, Mitchell sues for compensatory and punitive damages. Two recent Supreme Court opinions appear to be noteworthy in relation to Mitchell's damage claims, independent of others hereinafter referred to. *Wood v. Stricklan*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) and *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) stand for the rule that a state public official is not liable for damages in a § 1983 action unless he knew or reasonably should have known that his action would have violated another's federal constitutional rights. Such an official is under no duty to anticipate unforeseeable constitutional developments.

## II.

■ Mitchell contends that his federally protected rights in property and liberty have been deprived him by reason of his

removal from the Board of Regents. We hold that Mitchell has not established either a property or liberty interest entitling him to relief under 42 U.S.C. § 1983.

Mitchell relies heavily upon the broad, sweeping language in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) and *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) for the proposition that within the contemplation of the Fifth and Fourteenth Amendments, he had a property interest as a Regent entitling him to minimum standards or requisites of procedural due process before he can be removed as a Regent. We observe that members of the Board of Regents of the New Mexico Museum serve without compensation, are exempt from the state's civil service system, and exercise broad policy-making powers over the affairs of the Museum. Sections 4–12–33, N.M.S.A., 1953, and 4–12–35, N.M.S.A., 1953 (1975 Interim Supp.) and 5–4–31 B, N.M.S.A., 1953.

We hold that Mitchell has no federally protected property or liberty interest in the office of Regent. *Ulrick v. Sanchez, supra.* Further, Mitchell, was subject to removal by King "for incompetency, neglect of duty or malfeasance in office". Art. V, § 5, N.Mex.Const. Mitchell's complaint is based upon defamation of his good character and reputation without claim of actual damage. He alleges that his removal was, in the words of Art. V, § 5, *supra,* for alleged neglect of duty and malfeasance.

In the recent opinion entitled *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (44 U.S.L.W. 4337, March 23, 1976), the United States Supreme Court held that Davis' § 1983 action for damages against police chiefs who had distributed a "flyer" to area merchants which contained his name and photograph and identified him as one of the persons who had been arrested in 1971 or 1972 "or have been active in various criminal fields in high density shopping areas" with specific references to "shoplifting activity", while establishing a claim of defamation of character,

did not state an actionable claim under § 1983 *because injury to reputation is not deprivation of a protected property or liberty right.*

After the flyer had been circulated, the charge against Davis was dismissed by the judge. Davis contended that the actions of the police chiefs deprived him of "liberty" protected by the Fourteenth Amendment in that the "active shoplifter" label would seriously impair his access to business establishments, arouse suspicion upon his identification and seriously impair his future employment opportunities in violation of due process of law "mandated" by *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). The Supreme Court concentrated on two contentions relied upon by Davis: (1) the Due Process Clause of the Fourteenth Amendment and (2) the infliction of a "stigma" to his reputation infringing upon his "liberty" and "property" rights as used in the Fourteenth Amendment. The Court pointed out that, to be sure, certain language contained in *Wisconsin v. Constantineau, supra,* could be taken to mean that if a government official defames a person, without more, the procedural requirements of the Fourteenth Amendment are brought into play. The Court in *Davis, supra,* observed—and quite pertinently in relation to the case at bar—that the governmental action complained of must deprive the petitioner of a *right which has its genesis in state law, and the protective shield of § 1983 extends only to those interests* which "attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state laws, and we have repeatedly ruled that procedural guarantees of the Fourteenth Amendment apply whenever the state seeks to remove or significantly alter that protected status." In a nutshell, the Court held that injury to reputation is not a deprivation of a federally protected property or liberty right.

The District Court's reliance on *Adams v. Walker,* 492 F.2d 1003 (7th Cir. 1974), in support of this holding is well taken. There, the Illinois governor removed a

member of the Liquor Control Commission who had been appointed by a former governor to serve for a specific term per telegram relating simply that the removal was "for cause" and "for incompetence, neglect of duty and malfeasance". The Illinois Constitution expressly provided that the governor may remove "for incompetence, neglect of duty, or malfeasance in office" any officer appointed by the governor. The Court recognized that the rule that the plaintiff had no right to a hearing under the law of Illinois "is persuasive on the issue whether he has a property interest (entitled to federal constitutional protection), but it cannot be conclusive". The Court held that the removal without hearing *did not* take the officer's liberty without due process of law. The Court placed heavy emphasis on the fact that the removed officer was a policy-making official. Judge Stevens, now Mr. Justice Stevens, concurred and stated in part that "[t]he question whether Adams had a property interest in his position as a member of the Liquor Control Commission is, of course, purely a question of Illinois law. It is not for us to appraise the wisdom of the state's choice between giving such a Commissioner fixed tenure, on the one hand, or making his employment terminable at the unfettered discretion of the Governor, on the other".

### III.

■ We hold that Mitchell's First Amendment claim, i. e., that his removal and revocation as a Regent was violative of his rights of free speech for speaking out in opposition to the position taken by the governor, is without merit.

■ This Court has held that public office or employment generally is held not to be a property interest within the meaning of the Fourteenth Amendment, and particularly so in those circumstances where no right to continued employment exists. *Abeyta v. Town of Taos*, 499 F.2d 323 (10th Cir. 1974).

■ It is fundamental that regulation and/or limitation of speech is permissible in order to meet the need of a substantial government interest. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Cafeteria Workers v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); *Fisher v. Walker*, 464 F.2d 1147 (10th Cir. 1972).

■ Mitchell held a policymaking office as a Regent. In addition to the unquestionable right of removal of Mitchell vested in the governor under the provisions of Art. V., § 5 of the N.Mex.Const., *supra*, we hold that the governor of New Mexico may remove a policymaking appointee such as Mitchell for political reasons, without notice or hearing, and that this power encompasses removal for expressions made by the appointee in contravention of the policy goals of the governor. *Indiana State Employees Association v. Negley, supra*; *Alomar v. Dwyer*, 447 F.2d 482 (2nd Cir. 1971), cert. denied, 404 U.S. 1020, 92 S.Ct. 683, 30 L.Ed.2d 667 (1972), and cases cited therein. A contrary rule has been held to apply to a non-policymaking state employee. *Illinois State Employees Union v. Lewis, supra*; 38 Am.Jur.2d, Governor, § 8.

New Mexico has recognized that non-policymaking officials are entitled to due process before they may be dismissed, but "members of boards and commissions and heads of agencies appointed by the governor" are not entitled to the State Personnel Act's notice and hearing requirements preceding dismissal of state employees. Section 5-4-31 B, N.M.S.A., 1953 Comp.

WE AFFIRM.

BREITENSTEIN, Circuit Judge (concurring in the result).

I concur in the result but cannot concur in much of the supportive reasoning. I am particularly disturbed by the discussion of the decision of the Supreme Court in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, 44 LW 4337. The statement that, "the governmental action complained of must deprive the petitioner of a *right which has its genesis in state law, and the protective shield of 1983 extends only to those interests*" is followed by quotation

from *Paul v. Davis* which omits its footnote 5, at 710, 96 S.Ct. at 1165, 44 LW at 4342. That footnote reads:

"There are other interests, of course, protected not by virtue of their recognition by the law of a particular State, but because they are guaranteed in one of the provisions of the Bill of Rights which has been 'incorporated' into the Fourteenth Amendment. Section 1983 makes a deprivation of such rights actionable independently of state law. See *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)."

I agree with the quoted footnote and am fearful that its omission may lead to a misunderstanding of the extent of the rights protected by § 1983.

Judge BARRETT expresses his agreement with the observations contained herein interpretive of *Paul v. Davis, supra.*

WILLIAM E. DOYLE, Circuit Judge (concurring).

I specially concur in the opinion of Judge Barrett.

The ingredient of the state of mind of the violator of Section 1983 is considered in the opinion. This is purely gratuitous. Intent is in no way an element which is present here. The determinative holding is that the alleged right is non-existent. Is this not sufficient?

Insofar as the opinion rules that the claim of Mitchell rests on a possible property right (which proves to be non-existent) having its origin under state law, and as such is dependent on the due process clause of the Fourteenth Amendment, I agree.

I also agree that the state's highest court's construction of its laws binds us on the adequate state ground doctrine at least to the extent that it does not violate superior Federal doctrine. I object, though, to sweeping with a broad broom in this area so as to give the impression that state law governs the shape and form and content of rights granted by an Act of Congress and, particularly, a venerable one like Section 1983.

I must disagree with the construction given by the opinion to *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The opinion emphasizes that defamation is not to be given constitutional status. This is true if it is defamation which stands alone, is unaccompanied by a companion right. The language of the opinion is again too sweeping. It is incorrect to underline the sentence that the right protected in a Section 1983 action must have its genesis in state law. The opinion overlooks the explanatory footnote number 5 found in 96 S.Ct. at 1165, which reads as follows:

There are other interests, of course, protected not by virtue of their recognition by the law of a particular State, but because they are guaranteed in one of the provisions of the Bill of Rights which has been "incorporated" into the Fourteenth Amendment. Section 1983 makes a deprivation of such rights actionable independently of state law. See *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

Our discussion in Part III is limited to consideration of the procedural guarantees of the Due Process Clause and is not intended to describe those substantive limitations upon state action which may be encompassed within the concept of "liberty" expressed in the Fourteenth Amendment. Cf. Part IV, *infra.*

Thus, invasions proscribed in the Bill of Rights are protected.

In summary, I voice my reservations to the apparent tendency of the opinion to expand and exalt the state's role in defining federally protected rights.

I repeat that I do not question the conclusion that the plaintiff-appellant here lacks any semblance of a right.

Judge BARRETT expresses his agreement with the observations contained herein interpretive of *Paul v. Davis, supra.*