Phillip BLUME and Daniel
Jaramillo, Plaintiffs,

v.

David MENELEY and Shawnee
County, Kansas,
Defendants.

No. CIV.A.00–2559–CM.

United States District Court,
D. Kansas.

July 29, 2003.

Elizabeth R. Herbert, Pedro L. Irigonegaray, Robert V. Eye, Irigonegaray & Associates, Topeka, KS, Fred L. Slough, Slough, Connealy, Irwin & Madden, Kansas City, MO, for Plaintiffs.

Alan L. Rupe, S. Douglas MacKay, Husch & Eppenberger, LLC–Wichita, Wichita, KS, David P. Mudrick, Thomas E. Wright, Wright, Henson, Somers, Clark & Baker, Topeka, KS, for Defendants.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

Pending before the court is plaintiffs' Motion to Vacate (Doc. 143) that part of the court's June 25, 2003 Memorandum and Order (Doc. 139) (the "Order") that dismissed plaintiffs' defamation claims. In the Order, the court found that plaintiffs had not adequately preserved their defamation claims in the Pretrial Order (Doc. 88). Plaintiffs argue that the defamation claims were preserved and ask the court to vacate its Order and reinstate those claims. For the reasons set forth below, plaintiffs' Motion to Vacate is denied.

### I. Background

This case involves allegations that plaintiffs, two employees of the Shawnee County, Kansas Sheriff's Department, were denied promotions by defendant Shawnee County because of statements plaintiffs made to outside law enforcement agencies regarding Sheriff's Department activities. Specifically, plaintiffs allege that defendant Sheriff David Meneley kept plaintiffs from being promoted because plaintiffs had exercised their First Amendment rights in making the allegations, which led to an internal investigation and the eventual ouster of defendant Meneley.

Plaintiffs also claim that defendant Meneley made various allegedly defamatory statements in retaliation against plaintiffs' constitutionally-protected speech. Plaintiffs do not claim that any property or liberty interest was implicated in the alleged defamation.

### II. Standard: Motion to Vacate

■ A motion to reconsider or vacate filed within ten days after entry of judgment—as plaintiffs' motion was—is considered a motion under Federal Rule of Civil Procedure 59(e). *See Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir. 1991). Grounds warranting a motion under Rule 59(e) include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *See Brumark Corp. v. Samson Res. Corp.,* 57 F.3d 941, 948 (10th Cir.1995). Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's posi-

tion, or the controlling law. *Cf.* Fed. R.App. P. 40(a)(2) (grounds for rehearing). It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing. *See Van Skiver,* 952 F.2d at 1243.

The issue of whether plaintiffs preserved their defamation claims has been addressed in the parties' Motions for Summary Judgment and Reply thereto. The court found that the claims were not preserved and, therefore, dismissed them. Plaintiffs do not argue that the controlling law has changed or introduce any new evidence. Therefore, the court assumes that plaintiffs' argument contemplates clear error by the court that—if not reversed—the order will result in manifest injustice.

The court disagrees with this argument and finds that it did not commit clear error by dismissing plaintiffs' defamation claims as waived. However, in the interest of clarity, the court will illustrate its reasons for dismissing plaintiffs' claims.

### III. Plaintiffs Failed to Preserve Defamation Claims in the Pretrial Order

■ The pretrial order, together with any memorandum entered by the court at the conclusion of the final pretrial conference, controls the subsequent course of the action. D. Kan. Rule 16.2(c). "An order entered pursuant to Rule 16(e) supersedes the pleadings and controls the subsequent course of litigation." *Smith v. Bd. of County Comm'rs of County of Lyon,* 216 F.Supp.2d 1209, 1213 (D.Kan.2002).

■ Plaintiffs argue that defendants were on notice, prior to the entry of the Pretrial Order, that plaintiffs asserted a cause of action for defamation under 42 U.S.C. § 1983, as evidenced by the defenses pled by each defendant in the Pretrial Order. However, the court concludes that

defendants' defenses raised in the Pretrial Order were an effort to "cover all of the bases." The court will not penalize defendants for their attention to detail and for setting forth all possible defenses, as this court requires.

The court likewise declines to reward plaintiffs for their failure to set forth in the Pretrial Order a cause of action for defamation:

> In the event counsel fails to ensure that the contents of the pretrial order are in accordance with the discussion at the pretrial conference, counsel bears the risk of inadvertent error by the magistrate judge in finalizing such order. Where such error occurs, counsel's recourse is to timely move to revise the pretrial order ... or to be bound by its assertions.

*Hung Duc Bui v. IBP, Inc.,* 201 F.R.D. 509, 513 (D.Kan.2001). In this jurisdiction, pretrial conferences are routinely held by magistrate judges. In this case, counsel were given ample opportunity to review the Pretrial Order compiled by Magistrate Judge Waxse prior to its submission to this court for filing. The parties were also on notice that the Pretrial Order would be entered unless the magistrate judge received objections, corrections, or revisions to the proposed Pretrial Order. Defendant Meneley states that the parties "spent hours and hours in preparing and refining the Pretrial Order ... In the end, Plaintiffs' [sic] asserted a single claim ... [defendant] Meneley's failure to award promotions ..." Counsel, and not this court, are thus in the best position to know whether the final Pretrial Order omits something discussed at the pretrial conference and to timely take action to correct any such omissions. *See Id.*

In addition to their argument that defendants were on notice of plaintiffs' defa-

mation claims, plaintiffs argue that a fair reading of the Pretrial Order shows that the claims were preserved. The Pretrial Order contains only scattered factual references to allegedly defamatory comments made by defendant Meneley. Plaintiffs argue that these scattered references are adequate to preserve their claims. The Pretrial Order also sets forth damage to plaintiffs' reputations as a basis for damages. Claiming damages for injury to reputation resulting from retaliatory actions of the government is not the same as claiming a cause of action for defamation.

■ In this court, the Pretrial Order governs the pattern of the trial:

> Because the pretrial order represents a complete statement of all the contentions of the parties, this court is justified in relying heavily on it in ruling on summary judgment motions and in trying cases. The interests of finality underlying the purposes of a pretrial order are great, and this court is not lightly persuaded to revise pretrial orders by adding after a summary judgment order those matters which could have been corrected earlier by diligent counsel.

*Id.* (citations omitted). Because pretrial orders govern the pattern of the trial, the Pretrial Order contains a section devoted to listing those elements plaintiffs must prove at trial. In that section, at page 29, the plaintiffs set forth five elements, including the following:

- Plaintiffs are members of a protected class, in that they are First Amendment-protected whistle-blowers.

- Plaintiffs were qualified for the promotions they sought.

- Plaintiffs were rejected and non-members of the protected class were promoted over them.

The elements of a defamation action or any action for injury to reputation are not set forth anywhere in the Pretrial Order.[1] Further, plaintiffs state in the Pretrial Order that their retaliation claims are governed by the burden-shifting analysis required by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In the Pretrial Order, plaintiffs apply this law to their claims for failure to promote, but not to any defamation allegations.

In fact, the case law which plaintiffs argue would control their defamation claims was never set forth to this court until plaintiffs filed their Response to Defendants' Motions for Summary Judgment. In that response, plaintiffs cite cases from other circuits in support of the argument that retaliation by defamation is actionable under 42 U.S.C. § 1983. It is clear from that response and plaintiffs' Motion to Vacate that plaintiffs believe their claim presents a matter of first impression to this court. It is unreasonable to believe that diligent attorneys—like plaintiffs' counsel—would simply neglect to include case law in the Pretrial Order supporting their claim of first impression, if indeed plaintiffs intended to preserve such a claim.

The key to the court's determination is this: if plaintiffs were to proceed with their defamation claims at trial, the Pretrial Order would have to be amended to

---

1. Plaintiffs encourage the court to read into the Pretrial Order any cause of action encompassed by the language therein. While it is appropriate for the court to substitute a correct legal theory when an incorrect theory is set forth in the pretrial order, it is not up to the court to take scattered factual allegations and attempt to tie them together with some viable legal theory when the parties have failed to do so. If plaintiffs had set forth the elements of a viable cause of action supported by the relevant facts, the court's determination on this issue would be different.

set forth the elements and applicable legal standards for plaintiffs' defamation claim. Therefore, the Pretrial Order, as it currently exists, is not adequate to preserve plaintiffs' defamation claims.[2]

### IV. Even if Plaintiffs Had Preserved the Defamation Issue, the Court Would Have Granted Summary Judgment for Failure to State a Claim Under § 1983

 In addition, the court concludes that plaintiffs failed to state a claim under 42 U.S.C. § 1983 even if they had adequately preserved their defamation claims. In the summary judgment briefs, the parties presented arguments regarding whether plaintiffs would have a cause of action under § 1983 if the defamation claim were preserved in the Pretrial Order. The court did not address this issue because it found that the defamation claims were not preserved. However, even if the claims had been preserved, the court would have granted summary judgment on the merits of plaintiffs' defamation claims.

The parties agree that plaintiffs do not have a state law claim for defamation because plaintiffs failed to file the instant action within the one-year statute of limitations for defamation actions under Kansas law. Plaintiffs argue instead that the allegedly defamatory statements were uttered in retaliation for protected activity

and are, therefore, actionable under § 1983, which applies a two-year statute of limitations. Defendants counter that, under the Supreme Court's holding in *Paul v. Davis*, plaintiffs may only recover damages for injury to reputation under § 1983 if they suffered some deprivation of a liberty or property interest. 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

The parties agree that plaintiffs cannot state a cause of action under a deprivation of liberty interest theory. Therefore, the only theory under which plaintiffs could potentially recover is that of "retaliation against constitutionally protected activity that leads to injury."[3] *Rakovich v. Wade*, 850 F.2d 1180, 1188 (7th Cir.1988). The court will begin by analyzing the Supreme Court's holding in *Paul* in light of the cases cited by plaintiffs.

#### A. *Paul v. Davis*

In November 1972, the Jefferson County, Kentucky police departments published a flyer containing mug shot photos of people with open shoplifting cases pending against them and people who had been previously convicted of shoplifting. Above the pictures was the title "Active Shoplifters." The police circulated this flyer to 800 local merchants as a warning for the Christmas shopping season. A mug shot of the plaintiff appeared with his name on the second page of the flyer. Plaintiff had

**2.** In their Reply to Defendants' Responses to the Motion to Vacate, plaintiffs ask for the alternative relief of being allowed to amend the Pretrial Order. This is plaintiffs' first request to make this addition to the Pretrial Order, even though defendants' Motions for Summary Judgment, filed in April 2002, more than a year ago. The court believes that—in order to prevent manifest injustice to defendants the trial date would have to be continued if the Pretrial Order were amended. However, based on the court's ruling in part IV, the court finds that this request is moot.

**3.** In order to state any cause of action under § 1983, plaintiffs must have been deprived of a liberty or property interest protected by the Fourteenth Amendment. Therefore, plaintiffs could potentially recover if the defamation led to deprivation of a liberty or property interest or if the court finds that defamation is sufficient to state a retaliatory act against constitutionally-protected activity.

an open shoplifting case at the time of publication, but that charge was dismissed shortly after the flyer was circulated.

When plaintiff's supervisor saw the flyer, he questioned plaintiff about the shoplifting charges. The supervisor did not fire plaintiff, but did tell plaintiff he "'had best not find himself in a similar situation' in the future." *Paul*, 424 U.S. at 696, 96 S.Ct. 1155. Plaintiff then brought a § 1983 action against city and county officials. The district court granted defendants' motion to dismiss the complaint, finding that "'(t)he facts alleged in this case do not establish that plaintiff has been deprived of any right secured to him by the Constitution of the United States.'" *Id.*

The Supreme Court held that defamation by a state officer, standing alone, was not sufficient to create a federal cause of action for a state tort claim. The court found that,

> [w]hile we have in a number of our prior cases pointed out the frequently drastic effect of the "stigma" which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either "liberty" or "property" by itself sufficient to invoke the procedural protection of the Due Process Clause.

*Id.* at 1160–61. Therefore, "to establish a claim under § 1983 and the Fourteenth Amendment more must be involved than simply defamation by a state official." *Id.* at 1157.

**B. Cases Cited by Plaintiffs**

*Paul* did not involve a retaliation claim. The Court's holding states that injury to reputation, standing alone, is not actionable under § 1983. It is unclear what additional liberty or property interest must be compromised in order to create a federal cause of action for a state law tort, but that the Court indicates that damage to a tangible interest—like an employment opportunity—must occur, or that the defamation must be uttered coincident to the termination of the plaintiff's employment. *See Siegert v. Gilley*, 500 U.S. 226, 234, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (applying *Paul*).

Many courts have analyzed retaliation claims in the wake of *Paul*, but the court can find no case that expressly indicates whether *Paul* also restricts defamation claims that involve retaliation. Plaintiffs argue that defamation that is in retaliation for constitutionally-protected activity meets the *Paul* test of "stigma plus."

**1. *Rakovich v. Wade***

Plaintiffs argue that they have a § 1983 cause of action under the Seventh Circuit's holding in *Rakovich*, 850 F.2d 1180. In that case, a member of the city civil service commission brought a § 1983 case against the city police chief and certain police officers for retaliation against his exercise of his First Amendment rights. The plaintiff had previously been critical of police department activities. During an investigation into a burglary, the police determined that the plaintiff might be involved in criminal activities in an effort to interfere with the burglary investigation. The police presented their evidence to the Assistant District Attorney, and the Assistant District Attorney called a charging conference to examine the evidence and determine if charges were warranted. The charging conference was reported in the local newspaper. *Id.* at 1183.

The Assistant District Attorney ultimately decided not to file criminal charges against the plaintiff. The plaintiff sued the police chief and specific officers for injuring his reputation in retaliation for his

criticism. *Id.* Defendants argued that the plaintiff's injury to reputation did not amount to a constitutional claim under *Paul* because it was not accompanied by the deprivation of a property or liberty interest. The court stated that

> The officers' argument ignores that there are several configurations for stating a section 1983 claim, only one of which is the "injury to reputation that leads to a deprivation of a liberty or property" scheme. Another is that relied on by the district court: "retaliation against constitutionally protected activity that leads to an injury." The district court correctly found that *an investigation* conducted in retaliation for comments protected by the first amendment could be actionable under section 1983.

*Id.* at 1189 (citations omitted) (emphasis added). The court did not find that the plaintiff could assert a cause of action for the alleged defamation; rather, it found that the attendant publicity that arose from the investigation could support a claim for damages if the *investigation* was retaliatory. *Id.* at 1188 ("Thus, the humiliation associated with public disclosure of the charging conference and Rakovich's attendance at the conference were the only acts that might support a damage claim.").[4]

As plaintiffs stated in their Response to Defendants' Motions for Summary Judgment, the *Rakovich* court "recognized the vitality of *Paul,* but distinguished it when the injury to reputation was not the cause of action, but damages in a First Amendment retaliation claim." (Pl. Reply to Defs'. Mot. for Summ. Jt. at 57.) The court interprets *Rakovich* as stating that injury to reputation may form the basis for damages in a retaliation claim, but not stating that defamation may be the allegedly retaliatory act.

### 2. *Anderson v. Central Point School District No. 6*

In *Anderson v. Central Point School District No. 6,* the Ninth Circuit addressed a similar issue. 746 F.2d 505 (9th Cir. 1984). In that case, the plaintiff—an assistant coach—spoke about the athletic program at an open school board meeting and mailed a letter to the board members outlining a proposal for a restructured program. In response, the district superintendent "sent a letter to [the plaintiff], with copies to the Board Members, Athletic Director and School Principal, admonishing [the plaintiff] for communicating directly with Board Members and failing to send his proposal through proper channels, telling him he was not a 'team player' and indicating he would not be assigned another coaching job in the School District." *Id.* at 506.

The plaintiff filed a § 1983 action for an injunction against the school board's "channels" policy and for damages including injury to his reputation. Likewise, in *Anderson,* the retaliatory action was a suspension and admonition for speaking out and "not going through proper channels." Defendants argued:

> [B]ecause the plaintiff lost no salary as a result of the defendants' action, [the court] should treat the case as one for

---

4. In their response to defendants' Motions for Summary Judgment, plaintiffs state that the *Rakovich* court "went on to hold that defamation that is in retaliation of free speech is actionable under Section 1983." (Pl. Reply to Defs'. Mot. for Summ. Jt. at 57, citing *Rakovich,* 850 F.2d at 1211–12). However, as explained above, the *Rakovich* court stated that injury to reputation could form a basis for damages for a retaliatory act. It did not state that defamation could be the retaliatory act. Moreover, the pages pinpointed in plaintiffs' cite actually deal with qualified immunity and contain no reference to whether defamation is actionable under § 1983.

defamation and hence not maintainable under section 1983 in light of *Paul v. Davis*. Defendants' position, however, confuses the cause of action with the nature of the damages suffered.

*Id.* at 507–08. The court found, therefore, that the plaintiff's injury to reputation established a basis for damages because the suspension and admonition violated the plaintiff's First Amendment rights. The court did not hold that defamation was actionable if it occurred in retaliation for constitutionally-protected activity. The court distinguished *Anderson* from *Paul* by pointing out that the injury to reputation was the damage, and not the cause of action. The court did not distinguish *Anderson* by stating that retaliation added the "stigma plus" required by *Paul*. This court interprets the *Anderson* reasoning as an indication that the Ninth Circuit believed *Paul* barred recovery in retaliation cases as well.

### 3. *Merkle v. Upper Dublin School District*

Likewise, in *Merkle v. Upper Dublin School District*, the alleged retaliatory action was not defamation, but a school district's arrest and prosecution of a teacher for illegally removing school supplies. 211 F.3d 782, 785 (3rd Cir.2000). The plaintiff alleged that her arrest was in retaliation because she had been an outspoken proponent for raising multicultural awareness in the school district. The plaintiff's arrest received considerable attention in the local newspaper. The school principal also wrote a letter to the school board requesting that the plaintiff be fired for "immorality." *Id.* at 787–88.

The district court held that, because it had dismissed all of the plaintiff's constitutional claims, the plaintiff "could not show that any false statements by the District were made in the course of another constitutional violation." *Id.* at 797. The Third

Circuit held that there was a question of fact as to whether the district "was motivated by [the plaintiff's] exercise of her First Amendment right of speech to initiate a baseless prosecution." *Id.* Therefore, the court held, the plaintiff might be able to prove damages for injury to her reputation as a result of an *investigation* that violated her First Amendment rights. *Id.* Again, this case dealt with damages, not a cause of action based on defamation.

### C. Law of This Circuit

This circuit has addressed many claims of defamation by state officials in the wake of *Paul*. In fact, many of these cases involved defamation that was, arguably, in retaliation for exercise of constitutionally protected activity. In these cases, the Tenth Circuit has consistently held that defamation was not sufficient to state a cause of action unless a liberty interest was implicated. While one District of Kansas case has held that defamation in retaliation against First Amendment rights implicates a liberty interest, the Tenth Circuit has subsequently upheld a different result in similar cases.

### 1. *Schultz v. Shelor*

One District of Kansas case that is on point is *Schultz v. Shelor*, No. Civ. A. 84–4335–S, 1989 WL 38687 (D.Kan. Mar.23, 1989). The plaintiff in that case decided to run for election in 1984 to the United States Congress. Plaintiff's campaign literature promoted him as a "successful businessman." However, between 1980 and 1982, plaintiff had been involved in a business that subsequently folded. In January of 1983, following a hearing conducted by the Wage and Hour Division of the Kansas Department of Human Resources, the plaintiff was found liable for unpaid wages due employees of the failed company and for substantial debts in-

curred by the business which were personally guaranteed by the plaintiff. *Id.* at *1.

The Wichita Eagle–Beacon ran a story in April 1984 stating that the Wage and Hour Division found some of the testimony the plaintiff gave at the hearing to be untrue. This article prompted the Kansas Attorney General to open an investigation into possible perjury charges against the plaintiff stemming from the hearing testimony. The Attorney General's office made public a report that claimed there was sufficient evidence to prove that plaintiff had perjured himself. The Kansas Bureau of Investigation later determined that, although there was ample evidence to support a perjury charge, the likelihood of acquittal outweighed the chance for a conviction. *Id.* at *2.

The Wichita Eagle–Beacon reported on the progress of the investigation. The plaintiff filed suit under § 1983 for damage to his wife's business and injury to his reputation as a result of the press exposure generated by the perjury investigation. The plaintiff alleged that the defendants' conduct was motivated by their disagreement with the plaintiff's positions on abortion, homosexual rights and religion. *Id.* at *6. The defendants argued that the plaintiff failed to state a § 1983 claim under *Paul.* The court held, however, that such an action may be brought if:

a right or status previously recognized by state law was distinctly altered or extinguished. In addition to an injury to his reputation, plaintiff must allege the deprivation of a "property" or "liberty" interest. In the present case, plaintiff has adequately alleged that defendants deprived him of a liberty interest-his first amendment right to free speech. By linking this interest with the injury to his reputation, plaintiff satisfied the "reputation plus" test set out in *Paul v. Davis.* Therefore, the court rejects de-

fendants' arguments that plaintiff has not alleged a loss actionable under section 1983.

*Id.* at *6 (citations omitted). Therefore, the court found that the plaintiff had a cause of action because the infringement upon the his First Amendment rights implicated a liberty interest.

The court finds that the reasoning in *Schultz* is sound, and recognizes that the Tenth Circuit has not expressly resolved this issue. However, the court believes that *Schultz* runs contrary to implicit holdings in Tenth Circuit cases. Therefore, the court must follow what it believes to be binding authority in this circuit.

### 2. *Mitchell v. King*

In *Mitchell v. King,* the plaintiff alleged that he was removed from his position and defamed in retaliation for exercising his First Amendment rights. 537 F.2d 385 (10th Cir.1976). The plaintiff held a position on the Board of Regents of the New Mexico Museum, a position appointed by the governor. A fellow board member—the current president—was nearing the end of her term. The board had determined that the president should not be reelected. After this was disclosed to the board president, the governor contacted the plaintiff and other board members to secure the current board president's reelection. The plaintiff then wrote a letter to the board president requesting her resignation from the board "because she had injected politics into its affairs by obtaining the intervention of the governor." The plaintiff also advised the governor of his letter. *Id.* at 387. After learning of the plaintiff's letter, the governor publicly demanded the plaintiff's resignation from the board. When the plaintiff did not comply, the governor publicly removed the plaintiff from the board for "neglect of duty and malfeasance." *Id.*

The Tenth Circuit stated that "[The plaintiff's] complaint is based upon defamation of his good character and reputation without claim of actual damage," and that the plaintiff had no liberty or property interest in his position as Regent. *Id.* at 390. Even though the removal and defamation occurred in retaliation for the plaintiff's exercise of constitutionally-protected speech, the court found that the plaintiff did not have a claim under § 1983.

### 3. *Phelps v. Wichita Eagle–Beacon*

In *Phelps v. Wichita Eagle–Beacon,* the plaintiff alleged that the defendant newspaper defamed him in retaliation for exercising his First Amendment right of association. 632 F.Supp. 1164 (D.Kan.1986), *aff'd in relevant part,* 886 F.2d 1262 (10th Cir.1989). The plaintiff alleged that reports that he was "a black man's lawyer" defamed him in retaliation for his association with African–Americans. The district court found that *Paul* barred the plaintiff's recovery. The court held that this was a case of defamation standing alone and, under *Paul,* the plaintiff was not deprived of any liberty protected by the guarantees of the Fourteenth Amendment. *Id.* at 1167–68. The court held that:

> damage to plaintiff's reputation, without an accompanying loss of employment, or an opportunity for future employment, does not state a cause of action for a violation of plaintiff's liberty or property interests ... Even in accepting plaintiff's allegation of damage to plaintiff's reputation, the court finds that plaintiff has alleged no allegation which rises to a

deprivation of his federal constitutional rights

*Id.* at 1168.[5]

The Tenth Circuit affirmed the district court opinion in relevant part, finding that,

> We agree with the district court that *Davis* compels the conclusion that plaintiff has not sufficiently alleged a deprivation of a liberty or property interest under Section 1983. Plaintiff alleges in his First Amended Complaint that defendants placed a "defamatory cloud" over his "employment opportunities." That allegation is substantially similar to the allegation in *Davis* which was found insufficient. Like the claim in *Davis,* plaintiff's claim in this case is a "classical claim for defamation."

*Id.* at 1168

### 4. *Schmidt v. Cline*

In *Schmidt v. Cline,* the plaintiffs claimed that an elected official humiliated and criticized them for expressing their religious beliefs. 127 F.Supp.2d 1169 (D.Kan.2000). The court dismissed the plaintiffs' claims because they were not based on adequate factual allegations but conclusory allegations that did not state a claim. However, an ancillary statement by the court is instructive. While the alleged humiliation seems to have been in response to First Amendment-protected activity, the court stated that:

> Here, plaintiffs appear to complain that defendant's statements about them were critical and humiliating, not that their own right to speak has somehow been infringed. Similar claims are tradition-

---

**5.** It is noteworthy that Judge Saffels decided *Phelps* in 1986 and decided *Schultz* in 1989. The two holdings appear to be irreconcilable unless the court gives more weight to the First Amendment right of free speech than it gives to the First Amendment right of free association. The court can find no interven-

ing case law that would compel different legal analyses. However, the Tenth Circuit affirmed the relevant portion of *Phelps* in 1989, while *Schultz* was apparently never appealed. Therefore, the court will follow the Tenth Circuit's holding in *Phelps.*

ally brought not as free speech claims, but as defamation claims, where the statements of fact are false, and other elements are met.

*Id.* at 1176, n. 10. The court also stated: Nor have any allegations been made that defendant somehow illegally retaliated against the plaintiffs, or either of them, for any protected speech engaged in by either plaintiff. *Compare Lee v. Nicholl,* 197 F.3d 1291 (10th Cir.1999). There is no alleged employment, contractual, or other relationship between the plaintiffs and the defendant except that of resident taxpayers and elected public official, respectively. No allegations have been made that defendant denied or restricted plaintiffs' speech, or took adverse action against them because of their speech.

To prevail on a 42 U.S.C. § 1983 claim, plaintiffs must show that someone, acting under the color of law, statute, or ordinance, deprived them of a right, privilege, or immunity secured by the constitution. Construing the pleadings in the light most favorable to plaintiffs fails to show either a potential or actual deprivation of their free speech rights ... Plaintiffs have not directed the court to any case in which acts similar to those alleged here by a public official have been held to violate any constituent's free speech rights, nor has independent research revealed any. Accordingly, plaintiffs have failed to state a claim regarding the free speech clause.

*Id.* at 1177. While the language of the opinion does not specifically address whether retaliation by defamation is actionable under § 1983, the court implicitly found that allegations of defamation are not sufficient to state a claim for illegal retaliation.

Therefore, based on its interpretation of binding precedent in this circuit, the court concludes that plaintiffs failed to state a claim for defamation under § 1983 even if the defamation claims were preserved in the Pretrial Order.

## V. If Plaintiffs Could State a Cause of Action for Defamation, Defendant Meneley Would Be Entitled to Qualified Immunity

■ Finally, based on the court's holding that the Tenth Circuit has never recognized defamation as a basis for a retaliation claim and that plaintiffs fail to state a cause of action for defamation under § 1983, the court also finds that—even if plaintiffs could state such a claim—defendant Meneley would be entitled to qualified immunity:

[A] state public official is not liable for damages in a § 1983 action unless he knew or reasonably should have known that his action would have violated another's federal constitutional rights. Such an official is under no duty to anticipate unforeseeable constitutional developments.

*Mitchell,* 537 F.2d at 389. The court finds that, even if a cause of action exists under § 1983 for the alleged defamation, that cause of action is not based on a clearly established legal principle of which defendant Meneley should have been aware at the time. Therefore, the court finds that defendant Meneley would be entitled to qualified immunity for the alleged defamation.

**IT IS THEREFORE ORDERED** that plaintiffs' Motion to Vacate (Doc. 143) is denied.